WALDROP, COLLECTOR, *v*. KANSAS CITY SOUTHERN RAILWAY
COMPANY.

Opinion delivered December 10, 1917.

1.  COUNTY COURTS—ADJOURNMENT FOR TERM—ACTS AD INTERIM.—A county court on June 24 ordered that July 29 be fixed as a day for the hearing of a petition relative to the incorporation of a town, but thereafter entered an order adjourning court until the next term.   *Held,* any action taken by the court on July 29 was void.

2.  MUNICIPAL CORPORATIONS—ATTEMPTED INCORPORATION OF TOWN—INVALID, WHEN.—The attempted incorporation into a town of a tract of land seven miles along a railway right-of-way, upon which tract there were only a few residences, three lakes and much wooded land, *held,* invalid, being an arbitrary and unreasonable exercise of power by the county court.

3.  TAXATION—TAKING PRIVATE PROPERTY BY TAXATION WITHOUT RETURN OF PROTECTION—CONSTITUTIONAL LIMITATION.—An attempted method of taxation, which will result in the taking of private property for public use, without, in return, giving any protection or other compensation therefor to the owner is invalid.

4. TAXATION—RESTRAINT OF ILLEGAL LEVY.—A railway may, by injunction, restrain the county collector from collecting a tax against its property which is illegal because of the invalid organization of a municipal corporation, and because the tax is tantamount to the taking of property without giving to the taxpayer any return in protection or other compensation.

5. MUNICIPAL CORPORATIONS—DE FACTO—ASSESSMENT OF TAXES.— Where it was attempted to organize a municipal corporation, in a rural community, solely for the purpose of organizing a single school district, and there was no user of the franchise thereafter in good faith, *held,* an estoppel was not created to attack the validity of the organization of the town.

6. TAXATION—NO RIGHT TO TAX, BY PRESCRIPTION.—Neither a town nor a county can acquire jurisdiction of a territory for taxing purposes, by prescription.

Appeal from Little River Chancery Court; *Jas. D. Shaver,* Chancellor; affirmed.

*M. E. Sanderson,* for appellant.

1. The town of Ogden was legally incorporated. 97 Ark. 248. The incorporation could only be raised in a direct proceeding by the State. *Ib.;* 81 *Id.* 391; 47 *Id.* 269; 31 *Id.* 476; 20 *Id.* 204.

2. Acquiescence by the public for a long period of time precludes an inquiry into the legality of the incorporation. 38 Ark. 81; 54 *Id.* 372.

2. The orders were not void. The court was not held on the wrong day. Const. 1874, art. 18; Kirby's Digest, § § 1320, 1365; 104 Ark. 627; 82 *Id.* 188; 57 *Id.* 1; 39 *Id.* 448; 32 *Id.* 278; 31 Md. 247; 28 Ark. 200; 35 *Id.* 56; 40 *Id.* 431; 48 *Id.* 308; 208 U. S. 251; 95 Me. 385.

3. A valid levy of taxes was made. Kirby's Digest, § § 6894-5, 1499; 103 Ark. 529; 42 *Id.* 100; 37 Cyc. 9645; McQuillin, Mun. Corp., § 2404.

*James B. McDonough,* for appellees.

1. The purported levy of taxes was illegal and void. 103 Ark. 579; 100 *Id.* 488; Kirby's Digest, § § 1496-8. The levy being illegal, the injunction was proper. 46 Ark. 471; 70 *Id.* 555; 90 *Id.* 130; 124 *Id.* 349; 30 *Id.* 101, 128; 59 *Id.* 344, etc.

2.  The attempted levy by the town authorities was insufficient.  Const., art. 16; Kirby & Castle's Digest, § 1545, par. 8; 82 Ark. 51; 100 *Id.* 488; 103 *Id.* 579; 69 *Id.* 730; 54 *Id.* 509.

3.  There was no tax levied for the years 1915 nor 1916.  Const., art. 16, § 11; Kirby's Digest, § § 6894-5; 33 Ark. 690; 50 *Id.* 390; 54 *Id.* 665.  The tax was levied at a time and by persons, not authorized by law.  55 Ark. 213; 68 *Id.* 34; 74 *Id.* 383; 82 *Id.* 51; 100 *Id.* 488.  The record does not show that a majority of the quorum court participated in the levy.  103 Ark. 579.  There was no legal meeting of the council.  64 Ark. 489; 73 *Id.* 197; 84 *Id.* 550; 105 *Id.* 109; 28 Cyc. 329, and notes 54-5; 20 A. & E. Enc. L. 1211, 1212.

4.  Ogden was never legally incorporated.  But if so it lost its existence by nonuser.  9 Am. Rep. 103; 6 Lea 730; 2 *Id.* 425; 76 Tex. 323; 89 Mo. 188; 5 Pac. 350; 113 Ill. 491; 76 S. W. 351; 10 Tex. 137.  The orders of court were not made in term time.  68 Ark. 340; 82 *Id.* 188; 123 *Id.* 211; 124 *Id.* 234; 20 *Id.* 77; 27 *Id.* 414; 32 *Id.* 676; 55 *Id.* 213, etc.

5.  The law does not authorize the inclusion of large tracts of agricultural lands into towns.  54 Ark. 321, and cases cited; 43 Ark. 324; 55 Ark. 609, 616; 106 N. W. 971; 85 S. W. 483.

6.  The organization was unreasonable and void.  87 Mo. 396; 44 Mo. 574; 75 Ky. 419; 56 So. Rep. 632.  The agricultural lands were not benefited.

7.  Any taxpayer can enjoin an illegal tax by raising the illegality of the existence of the town.  99 N. E. 388; 57 S. E. 114; 53 S. W. 191; 8 Ia. 82.  See also 10 La. Ann. 763; 1 Neb. 16; 48 S. W. 851; 87 N. E. 349; 34 Ark. 603; 46 *Id.* 471, etc.

### STATEMENT OF FACTS.

This is a suit for injunction in the chancery court by the Kansas City Southern Railway Company to restrain W. D. Waldrop as collector of taxes for Little River County from enforcing the collection of taxes in the town

of Ogden, in said county, for the years 1915 and 1916. In the complaint it is alleged that there is no such incorporated town in existence and the proceedings under which such town was attempted to be organized are void. It is also alleged that there was no valid levy of taxes for the years 1915 and 1916.   The facts are as follows:

On the county court records of Little River County under date of June 24, 1907, appears the following:

"In the Matter of Incorporation of Ogden.

"Now on this date comes J. N. Wood *et al.*, and present to the court their petition for the incorporation of Ogden, and upon consideration it is considered, ordered and adjudged by the court that J. T. Cowling be and he is hereby designated as agent herein, and July 29, 1907, is hereby fixed as the day to hear this cause."   "Ordered that court adjourn until court in course.   W. E. Kinsworthy, County Judge."

On the next page of the record appears the following:

"In the Matter of J. N. Wood *et al.*   Petition to County Court.

"On this the 29th day of July, 1907, the day appointed for the public hearing of the petition filed by W. C. Forcade *et al.*, for the incorporation of certain territory in the town of Ogden, this cause coming on to be heard upon the petition, and the petitioners appearing by their agent, J. T. Cowling, heretofore designated as such agent, and it appearing to the court:   That due and legal notice was published in the 'Little River News,' a newspaper published and having a *bona fide* circulation in Little River County, for four consecutive weeks, towit: July 5, 12, 19, 26, respectively, and no remonstrance having been filed or other objections made by any person to the organization of said territory or incorporating the same into the town of Ogden.   That said petition is signed by twenty-five qualified voters residing within the territory described in said petition and asked to be embraced in said incorporation.   That the name proposed

for said town is proper and sufficient to distinguish it from other towns in the State. And it further appearing to the court that it is right and proper that the said petition should be granted. It is therefore considered, ordered, adjudged and decreed by the court that the following territory, being the same set out in said petition, be organized and incorporated into the town of Ogden, towit: Beginning at where the north and south lines of sections seven and eight, township 14 south, range 28 west, of fifth principal meridian strikes the south bank of Red River, and running thence north along said line to the northwest corner of southwest quarter section 7, township 13 south, range 28 west of the fifth principal meridian; thence west to the northwest corner of the southwest quarter section 15, township 3 south, range 29 west of the fifth principal meridian; thence south to the south bank of Red River; thence east along said south bank of Red River to the point of beginning.''

On a subsequent page of the same record appears an order of the county court changing the boundary line between Ogden Special School District and Common School District No. 6, in Little River County. All of the territory in the town of Ogden was created into the special school district. Formerly the whole of said territory had been a part of Common School District No. 6. The evidence in the record shows that originally the negroes were largely in the majority in Common School District No. 6, and the white people desired to form themselves into a special school district in order to get rid of the negroes. They were advised that the way to do this was to organize a town and then form a special school district out of the territory embraced within the corporate limits of the municipality as provided by section 7668 of Kirby's Digest *et seq.* In attempting to organize the town of Ogden the land on both sides of the railroad for seven miles in length and five miles in width was taken. There were houses on the eighty acres on which the railroad station of Ogden was situated. The balance of the territory designated was either farm lands or timber

lands. Most of the lands were timber lands. There were about four lakes situated within the proposed territory. After the purported order of the county court above set forth was entered of record an election of a mayor, a recorder, and five aldermen was had. The evidence shows that a few ordinances were passed but no record was made of them. The person elected mayor left for another place early in 1908, and the record also shows that the most of the aldermen at various times left and established residences elsewhere. After the order of the county court declaring the organization of the special school district was entered of record, there was no other attempt to exercise any of the governmental functions of a municipality. There was no other election of officers and those elected in the beginning did not attempt to exercise any of the functions of their offices after the first of the year 1908, until they were persuaded to come back in the fall of 1915, and make the levy of special taxes which is the subject-matter of this lawsuit. Other facts will be stated or referred to in the opinion.

The chancellor found that the alleged town of Ogden was not legally incorporated; that the alleged order of incorporation made July 29, 1907, was void and that there was no levy of taxes as required by law. It was decreed that W. D. Waldrop, as collector of taxes be enjoined from the collection of any taxes claimed to be due the town of Ogden from the plaintiff.

HART, J., (after stating the facts). (1) In the first place the chancellor held that the corporation was not organized in accordance with the statute so as to acquire thereby a valid existence and in this conclusion we think the chancellor was correct. Section 5576 of Kirby's Digest provides that the order for the organization of incorporated towns shall be made by the county court. The record of the county court of June 24, 1907, shows that the court ordered July 29, 1907, as the day to be fixed for the hearing of a petition relative to the incorporation of Ogden. Subsequently, however, the record shows that the court was adjourned until court in course. This su-

perseded the former order and adjourned the court until the next term thereof. There was no regular term of the county court of Little River County between June 24 and July 29, 1907. So the order purporting to have been made on July 29, 1907, was made at a time when the county court of Little River County could not be in session and the proceedings purporting to be of that date were not judicial proceedings. When it was ordered on the 24th day of June, 1907, that the county court should be adjourned until court in course, the term lapsed and no further proceedings could be taken until the court met at a subsequent term pursuant to the statute.

(2-3) The order of the court organizing the proposed territory into an incorporated town was null and void for the reason that the land was not of such character as could form an incorporated town. The record shows that the territory attempted to be formed into the town of Ogden ran parallel with the railroad track on both sides of it and was seven miles in length and about five miles in width. The railroad station of Ogden was situated on eighty acres of the land and there were a few residences on these eighty acres. Most of the remainder of the lands within the limits of the proposed town were timber lands and the remainder were agricultural lands. There were four lakes upon the lands within the limits of the proposed town. It was manifest that the owners of the lands could not derive any benefits whatever from the lands being placed within the limits of an incorporated town. It appears from the record that the town was only incorporated for the purpose of organizing a single school district. Article 2, section 22, of our Constitution of 1874 provides that the right of property is before and higher than any constitutional sanction; and that private property shall not be taken, appropriated or damaged for public use, without just compensation therefor. Article 2, section 23, provides that the State's ancient right of eminent domain and of taxation is therein fully and expressly conceded; and that the General Assembly may delegate the taxing power, with the necessary restrictions

to the State's subordinate political and municipal corporations to the extent of providing for their existence, maintenance and well-being, but no further. So it may be said that the right of taxation and the right of eminent domain rest on the same foundation. Compensation is made or secured when private property is taken in either way. When the State or municipalities take money or property for public use by taxation, the owner receives just compensation in the protection which is afforded to his life, liberty or property. It is evident that if there can be a case of taking private property for public use in the form of taxation under color of the organization of an incorporated town and without making compensation therefor, this must be regarded as one. It is perfectly plain from the record that the purpose of those signing the petition for the incorporation of the proposed town was to organize it into a single school district. They sought to bring within the taxing power of the proposed corporation the lands used for farming purposes or which were covered with timber and which were not needed for town lots and for which there could not be any reasonable anticipation of such use at any time within the future. The attempted organization of the proposed territory into an incorporated town was palpably wrong and was an arbitrary and unreasonable exercise of power. Under the circumstances, as they appear from the record, it is evident that the property of the railroad company is subject to the local burden of taxation solely for the benefit of others, and we think this is a case of taking private property for public use under the form of taxation without giving any protection or other compensation therefor. The attempted organization of the town of Ogden was therefore within the prohibition of our Constitution and was absolutely void. *Vestal* v. *Little Rock,* 54 Ark. 321; *City of Covington* v. *Southgate,* 15 B. Monroe (Ky.) 491, and *Morford* v. *Unger,* 8 Ia. 82. It follows that the proposed territory could not be organized into a single school district unless it was in an incorporated town. Kirby's Digest, § 7668. So it will be seen that

if the question presented by this appeal had been raised immediately there would have been no trouble in disposing of the case under the principles of law above announced.

(4)  As we have just seen, there was no *bona fide* organization of the municipality and no user of the charter in good faith afterward.  The railroad company had, under the clauses of our Constitution above referred to, a vested interest in its property, and the whole scheme was under color of taxation, an appropriation of private property without compensation.  Hence the railroad company might maintain the action.

But it is claimed that even if the corporation might have been declared illegal, had proceedings for the purpose been begun within a reasonable time, that even the State would now be precluded by lapse of time and recognition of the corporation, from attacking its existence.

The leading case on this question is that of *State* v. *Leatherman*, 38 Ark. 81, where it was held that the State, by long acquiescence and continued recognition of a municipal corporation, was precluded from depriving it of the franchise long exercised in accordance with the general law.  The court based its decision on the ground of public policy and the desire of the courts to sustain rather than defeat the validity of municipal corporations.  The court after discussing at some length these questions of public policy, said:

"We are emboldened by them to declare in behalf of the public good, that the State herself may, by long acquiescence, and by continued recognition through her own officers, State and county, of a municipal corporation, be precluded from an information to deprive it of franchises long exercised in accordance with the general law."

(5)  In the case of *Rainwater* v. *Childress*, 121 Ark. 541, the court held with reference to private corporations that color of legal organization as a corporation under some statute and user of the supposed corporate franchise in good faith were indispensable to the existence of a *de facto* corporation.  We think this principle is recog-

nized in the case of municipal corporations in the case of *State* v. *Leatherman, supra,* and in *Black* v. *Brinkley,* 54 Ark. 372. In each of those cases there was a *bona fide* attempt to organize the corporation which was followed for a period of years by user of the corporate franchise in good faith. This was recognized by the State, by the courts and by the public generally. Here the facts·are essentially different. There was *no bona fide* attempt to organize an incorporated town and there was no user of its franchise afterwards in good faith. The incorporated town was attempted to be organized solely for the purpose of organizing a single school district. It was not organized for governmental purposes as is usual in the case of incorporated towns and there was not even a pretended user of the corporate franchise after the single school district was organized. The mayor left and became a resident of another place within about six months after the attempted organization. Most of the aldermen also left and there was no attempt to exercise any governmental functions within the proposed corporate limits until the fall of 1915, when an attempt was made to levy the taxes which formed the basis of this lawsuit. Under these circumstances it can not be ·said that any estoppel was created to attack the validity of the organization of the town.

(6) In the case of *Attorney General* v. *Marr et al.* (Mich.), 21 N. W. 883, it was claimed that long acquiescence in the action of the board of supervisors in the organization of a township estops the State from questioning the validity of the proceedings. The court held that the board possessed no power to organize a township in the territory mentioned at the time it attempted to do so and that regular proceedings in such a case would not give the township a legal existence. It was, therefore, held that the action of the board furnished no foundation for the estoppel claimed. The officers of the railroad company testified that they did not know anything about the attempted organization of the town. They admitted that they paid school taxes to the State and that their

railroad ran through the county for a considerable distance. They testified that they had been accustomed to paying the school taxes on a mileage basis and thought that the territory in question still belonged to the school district in which it had formerly been situated. This action of the railroad company did not create an estoppel. Neither a town nor a county can acquire jurisdiction of a territory for taxing purposes by prescription. *Russell v. Robinson,* 153 Ala. 327, 44 So. 1040, and *Inhabitants of Eden* v. *Pineo* (Maine), Ann. Cas. 1913-A, page 1340, and case note.

It follows that the decree must be affirmed.

McCULLOCH, C. J., (concurring). The decree of the chancellor restraining the tax collector from enforcing the void tax levy for the years 1915-16 was clearly correct for reasons which are not stated in the opinion of the majority and which I need not mention, though I concur in the judgment of this court on those grounds. There was no valid levy of taxes, and appellant was entitled to relief against the illegal exaction under the void tax levy, but I dissent from the holding of the majority that the legal existence of the municipal corporation can be challenged by appellant for the purpose of defeating the levy and collection of taxes. "It is the doctrine of the Supreme Court of Arkansas," we said in the case of *Brown* v. *Wyandotte & Southeastern Ry. Co.,* 68 Ark. 134, "that the existence of a corporation once formed can be questioned only by a direct proceeding and that at the suit of the State." That rule applies not only to private and *quasi*-public corporations, but with much more force to public corporations. *State* v. *Leatherman,* 38 Ark. 81; *Black* v. *Town of Brinkley,* 54 Ark. 372.

The decision of this court in *Vestal* v. *City of Little Rock,* 54 Ark. 321, which seems to be relied on by the majority as supporting their view that the original incorporation of the municipality in question was void because the territory included was agricultural lands and that the incorporators did not act in good faith, was rendered in

a direct attack on appeal by a citizen and taxpayer from the order of the county court annexing territory to a municipal corporation. The effect of the present decision is, I think, to leave the organization of a municipal corporation open to collateral attack at any time by a dissatisfied taxpayer. This is a very dangerous doctrine and will be subject to great abuse. It overturns the settled policy of this court with respect to the relations between a *de facto* corporation and a taxpayer and gives the latter the right to attack collaterally the legal status of the former in order to defeat the collection of taxes—a right that has never been recognized by this court heretofore.