McCARROLL, COMMISSIONER OF REVENUES, *v.* ARNOLD.

4-5929                                        137 S. W. 2d 921

Opinion delivered February 26, 1940.

*Lester M. Ponder* and *Frank Pace, Jr.,* for appellant.

*W. S. Walker* and *Virgil D. Willis,* for appellee.

HOLT, J.  Z. M. McCarroll, commissioner of revenues for the state of Arkansas, brings this appeal from a final decree of the Pulaski chancery court permanently enjoining him from collecting, or attempting to collect, a tax on motor vehicle fuel sold within the town of Omaha, Boone county, Arkansas, at a rate in excess of that provided for by the laws of Missouri.

It is alleged by appellees in their petition for a restraining order that they are residents of the incorporated town of Omaha, Arkansas, and are engaged in the sale of gasoline to retail dealers therein; that Omaha was duly incorporated prior to March 25, 1937, and its corporate limits extend to the Missouri state line; that appellant was, and is attempting to collect the regular state tax of 6½ cents per gallon on all gasoline sold by them within the corporate limits of said town and that in the absence of an injunction restraining appellant from collecting said tax, petitioners would suffer irreparable damage.  They prayed for a temporary restraining order and that upon final hearing said order be made permanent.

Upon this petition a temporary restraining order was entered.

Appellant in his answer admitted that petitioners resided in, and sold gasoline to retail dealers within the town of Omaha, Arkansas, that an order incorporating the town on January 30, 1936, was entered in the Boone probate court (and not in the Boone county court as required by statute) and admitted that the corporate limits extended to within two miles of the Missouri state line. Appellant admitted that he had ordered appellees to pay a tax of 6½ cents per gallon on all gasoline sold within the town of Omaha.

All other material allegations in the petition were denied and appellant, by way of affirmative defense, among other things, alleged that the great majority of the land included in the incorporation order was utterly unfit for town purposes and was not in fact needed for such purposes; that the sole reason for incorporating said town of Omaha was to evade the provisions of the gasoline tax laws of the state of Arkansas, and that the incorporation did not include all of the former village of Omaha.

The legislature of Arkansas in 1935 passed act 147, which provided (under § 1) that gasoline dealers in any city or incorporated town, the corporate limits of which extend to within two miles of a state line, might sell gasoline at the rate of tax prescribed by law in the adjoining state. When this act was passed the unincorporated village of Omaha was located about 3¼ miles south of the Missouri-Arkansas state line in Boone county.

Subsequent to the passage of act 147 of 1935, and prior to 1937, the town of Omaha was incorporated under the name of Omaha embracing territory which extended over a tract of ground approximately four miles long and a quarter of a mile wide, terminating at the Missouri state line.

As thus incorporated, Omaha sought the right to avail itself of the privileges extended under act 147, *supra*. This court, however, in *Wiseman, Commissioner of Revenues,* v. *Town of Omaha,* 192 Ark. 718, 94 S. W. 2d 116, held that the act applied only to towns, or cities, incorporated prior to the passage of said act 147 and, therefore, its provisions did not apply to the town of Omaha. After this decision, the legislature of Arkansas in 1937 enacted act 303, which contained and re-enacted the identical provisions of § 1 of act 147 of the Acts of 1935, *supra*.

It was subsequent to the passage of act 303 that appellees filed their petition, *supra,* in the Pulaski chancery court seeking and securing the restraining order in question.

The record reflects that appellees (petitioners below) relied for relief solely on a certified copy of an

order issued by the Boone county court as of the 30th day of January, 1936, establishing the incorporation of the town of Omaha, signed by M. O. Penix, county and probate judge.

Appellant (respondent below) offered in evidence the testimony of Mr. J. F. Soard, and upon objection by appellees the learned chancellor ruled the proffered testimony incompetent. The substance of the testimony offered by appellant was stated by appellant as follows:

"I intended to prove by Mr. Soard's testimony that the town of Omaha, which was incorporated, included a strip of land a quarter of a mile wide and four miles long, and further intended to prove by his testimony that the land included within the description of the order of the county court was agricultural land, included timber land, and also bluff-land, which was impossible of traversal, either by wagon or by automobile. I further intended to prove that the incorporated limits of the town of Omaha actually failed to include the school in the town—that is, the school was left outside of the incorporated limits, and the church and the railroad station, but we will stipulate that the business section is included and all the residential section except the consolidated school, outside of town; that approximately seven-eighths of the territory included therein was uninhabited territory, except for isolated farm houses."

It thus appears on this record that the town of Omaha was purportedly incorporated on January 30, 1936, and that act 303 of the Acts of the General Assembly of the State of Arkansas for 1937 was passed more than a year subsequent to the date of this incorporation.

Appellees insisted on the trial below, and contend here, that appellant cannot make a collateral attack on the order of the Boone county court incorporating the town of Omaha and that the trial court was correct in so holding.

On the contrary, appellant urges here that under the evidence offered by him before the chancellor he was entitled to attack collaterally the incorporation of the town of Omaha for the reason that said incorporation

order is void *ab initio;* that the court erred in refusing this testimony and in denying him this right of collateral attack.

After a careful review of the record we have reached the conclusion that appellant is correct in both of these contentions. The question, therefore, presented here is whether an unincorporated town can incorporate a strip of land four miles long and a quarter of a mile wide running to the borderline of an adjoining state, which strip of land includes therein territory unsuited for municipal purposes, agricultural land not needed or adapted for city uses, to which no streets or other municipal improvements extend, which is uninhabited except for a few isolated farm houses, and thus avoid payment of the state tax on gasoline on the theory that the order of incorporation, though void *ab initio,* is not subject to collateral attack?

On the record before us, it is our view that the order of the Boone county court purporting to incorporate the town of Omaha was and is void, and, therefore, open to collateral attack.

We think the principles of law enunciated in the case of *Waldrop, Collector,* v. *Kansas City Southern Ry. Co.,* 131 Ark. 453, 199 S. W. 369, L. R. A. 1918B, 1081, control here.

The Waldrop case involved a suit for injunction on the part of the Kansas City Southern Railway Company to restrain W. D. Waldrop as collector of taxes for Little River county from enforcing the collection of taxes in the town of Ogden on the grounds that the incorporation of the town of Ogden was void and a nullity. In attempting to organize the town of Ogden, land on both sides of the railroad seven miles in length and five miles in width was taken. This land included principally farm lands or timber lands unsuited for town purposes.

This court in commenting upon the purported incorporation of the town of Ogden, said:

"The order of the court organizing the proposed territory into an incorporated town was null and void for the reason that the land was not of such character as

could form an incorporated town. The record shows that the territory attempted to be formed into the town of Ogden ran parallel with the railroad track on both sides of it and was seven miles in length and about five miles in width. The railroad station of Ogden was situated on eighty acres of the land and there were a few residences on these eighty acres. Most of the remainder of the lands within the limits of the proposed town were timber lands and the remainder were agricultural lands. There were four lakes upon the lands within the limits of the proposed town. It was manifest that the owners of the lands could not receive any benefits whatever from the lands being placed within the limits of an incorporated town. . . .

"The attempted organization of the proposed territory into an incorporated town was palpably wrong and was an arbitrary and unreasonable exercise of power. Under the circumstances, as they appear from the record, it is evident that the property of the railroad company is subject to the local burden of taxation solely for the benefit of others, and we think this is a case of taking private property for public use under the form of taxation without giving any protection or other compensation therefor. The attempted organization of the town of Ogden was therefore within the prohibition of our Constitution and was absolutely void. *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778; *City of Covington* v. *Southgate,* 15 B. Monroe (Ky.) 491; and *Morford* v. *Unger,* 8 Ia. 82."

It will thus be seen that the effect of our holding in the Waldrop case is that where an attempted act of incorporation is void *ab initio*, it is subject to collateral attack, and we have been cited to no subsequent rulings of this court to the contrary.

We conclude, therefore, that the chancellor erred in excluding testimony offered by appellant. The cause is therefore reversed, and will be remanded for trial in accordance with the principles of equity as outlined in this opinion.