Arnold *v.* McCarroll, Commissioner of Revenues.

4-6086

143 S. W. 2d 35

Opinion delivered July 1, 1940.

*Wm. S. Walker* and *Virgil D. Willis,* for appellant.

*Frank Pace, Jr.,* and *Lester M. Ponder,* for appellee.

Humphreys, J.    Section 1 of Act 147 of the Acts of 1935 of the General Assembly provides that any gasoline dealers in any city or incorporated town within two miles of the state line may sell gasoline at the rate of tax permitted by the law in the adjoining state.    After the passage of said act and before the passage of Act 303 of the Acts of 1937, the village of Omaha, consisting of about 250 residents and situated about four miles south of the state line on United States Highway No. 65, was incorporated so as to include within its boundaries a part of the village and lands approximately four miles long and one-fourth of a mile wide to the dividing line between Arkansas and Missouri so as to make it a border town and enable the gasoline dealers therein to pay the Missouri rate of 2½c per gallon instead of the Arkansas rate of 6½c per gallon for the sales of gasoline within said incorporated territory.

When the Revenue Collector of Arkansas attempted to collect 6½c per gallon on their sales, a suit was

brought to prevent him from doing so which resulted, on appeal to this court, in an opinion that Act 147 of the Acts of 1935 did not apply to the incorporated town of Omaha, but only applied to border towns incorporated prior to the passage of said Act 147. The case in which that opinion was rendered can be found in 192 Ark. 718, 94 S. W. 2d 116, under the style of *Wiseman, Commissioner of Revenues,* v. *Town of Omaha.*

Thereafter Act 303 of the Acts of the General Assembly of 1937 was passed embracing substantially the provisions of § 1 of Act 147 of the Acts of the General Assembly of 1935, exempting dealers of gasoline in border towns from paying the Arkansas rate and permitting them to pay the rate fixed by law in the adjoining state.

Suit was brought by appellants herein against appellee in the chancery court of Pulaski county to restrain him from collecting 6½c per gallon on gasoline sold within the corporate limits of the town of Omaha, alleging the incorporation of the town prior to the passage of Act 303 of the Acts of 1937, exempting border towns from paying the Arkansas rate of 6½ cents per gallon.

Appellee herein filed an answer denying the validity of the incorporation of Omaha for the reason that the lands embraced within the boundaries thereof north of the original village were not urban in character and not needed for the legitimate expansion of the town or village.

The Pulaski chancery court found that the incorporation of Omaha was not subject to collateral attack and refused to permit appellee herein to introduce evidence tending to show that the lands between the original village and the Missouri and Arkansas division line were partly agriculture and timbered lands and were not needed for the legitimate expansion of the original village.

On appeal, this court reversed the finding and decree of the trial court and the cause was remanded with directions to the trial court to admit the excluded evidence and proceed with the trial.

It is the law of the case, so held by this court on the first appeal, that the invalidity of an order of a county court incorporating a town in this state may be attacked collaterally by introducing testimony showing that the territory sought to be incorporated was rural and not urban in character.

Upon the remand of the case the trial court heard testimony relative to the character of the lands sought to be incorporated in the town of Omaha between the village and the division line between Arkansas and Missouri. The evidence introduced by appellees showed that a part of the village of Omaha was included in the order incorporating the town of Omaha and also lands between three and four miles north thereof which lands were agricultural and timbered lands in the main, and that the agricultural and timbered lands were partly level, partly rough and mountainous and that they contained ravines and gulches and were not needed for urban purposes.

The evidence introduced by appellants showed that while the land was rough and contained some gulches and had much timber upon it and was being used mostly for agricultural purposes, yet it could be used for urban purposes if it were cleaned up and streets were laid off and worked. Their witnesses also testified that it was not rougher than some lands embraced within the corporate limits of Eureka Springs and lands adjoining the main city of Harrison which were being used for urban purposes.

Both sets of witnesses admitted that the agricultural and timbered lands embraced within the corporate limits had not been laid off in blocks, lots, streets and alleys, but was being used in the same manner as it had been used prior to the incorporation of Omaha.

In announcing the principles of law by which to determine whether the incorporation of Omaha was valid in this case on the first appeal in the case of *McCarroll, Commissioner,* v. *Arnold,* 199 Ark. 1125, 137 S. W. 2d 921, this court adopted the principles laid down for the

test which were enunciated in the case of *Waldrop, Collector,* v. *Kansas City So. Ry. Co.,* 131 Ark. 453, 199 S. W. 369, L. R. A. 1918 B, 1081, and in doing so said: "On the record before us, it is our view that the order of the Boone county court purporting to incorporate the town of Omaha was null and void, and, therefore, open to collateral attack. We think the principles of law enunciated in the case of *Waldrop, Collector,* v. *Kansas City Southern Ry. Co.,* 131 Ark. 453, 199 S. W. 369, L. R. A. 1918 B, 1081, control here."

In the Waldrop case, *supra,* in commenting upon the purported incorporation of the town of Ogden, the court said: "The order of the court organizing the proposed territory into an incorporated town was null and void for the reason that the land was not of such character as could form an incorporated town. The record shows that the territory attempted to be formed into the town of Ogden ran parallel with the railroad track on both sides of it and was seven miles in length and about five miles in width. The railroad station of Ogden was situated on eighty acres of the land and there were a few residences on these eighty acres. Most of the remainder of the lands within the limits of the proposed town were timber lands and the remainder were agricultural lands. There were four lakes upon the lands within the limits of the proposed town. It was manifest that the owners of the lands could not receive any benefits whatever from the lands being placed within the limits of an incorporated town. . . ."

After carefully reading the evidence introduced in this case upon remand and applying the principles of law announced by this court in this case as well as in the case of *Waldrop, Collector,* v. *Kansas City So. Ry. Co., supra,* we have concluded that the incorporation of the town of Omaha was void for the reason that most of the lands included within the corporate limits were agricultural and timbered lands and not needed for the legitimate expansion of the village or town of Omaha. Even if it be conceded that the lands might be laid off in blocks, lots, streets and alleys no such use of them

was intended then or in the future. The agricultural and timbered lands embraced within the corporate limits were uninhabited except for a few isolated farm houses and the purpose of embracing them within the corporate limits was to avoid the payment of the 6½c state tax on gasoline to be sold therein. No other reasonable conclusion can be drawn from reading the testimony. We think the trial court upon the remand of this cause correctly declared that the agricultural and timbered lands included in the corporate limits were not needed for urban purposes nor intended to be used for urban purposes and for that reason the incorporation of Omaha was void.

The decree is, therefore, affirmed.