PARK *v.* HARDIN, COMMISSIONER OF REVENUES.

4-6759　　　　　　　　　　　　　　160 S. W. 2d 501

Opinion delivered April 6, 1942.

---

*Harvey G. Combs,* for appellant.

*Bob Bailey* and *D. D. Panich,* for intervener.

GRIFFIN SMITH, C. J.   The right of dealers within the incorporated town of Omaha (Boone county) to sell gasoline without collecting a tax of six and one-half cents per gallon is challenged.

Appellant sought to enjoin the commissioner of revenues from collecting only the rate charged in Missouri. The town intervened.  So did Garfield, incorporated in Benton county.  Since the interveners do not sell gasoline and are not citizens within the meaning of art. 16, § 13, of the constitution, their pleas must be dismissed and the cause considered on the Park complaint.

This is the fourth appeal from proceedings testing Omaha's status as a border town wherein gasoline may be sold for the purchase price plus a tax equal to that charged in Missouri. *Wiseman, Commissioner of Revenues,* v. *Town of Omaha,* 192 Ark. 718, 94 S. W. 2d 116; *McCarroll, Commissioner of Revenues,* v. *Arnold,* 199 Ark. 1125, 137 S. W. 2d 921; *Arnold* v. *McCarroll, Commissioner of Revenues,* 200 Ark. 1094, 143 S. W. 2d 35.

Heretofore judicial constructions have been given which secured to the state revenues withheld under incor-

poration methods which are but colorable when considered in the light of legislative intent. It was our belief, based upon undisputed physical facts disclosed by the record, that the single purpose actuating those who enlarged the territorial area by embracing a narrow strip extending north to within "range" of the Arkansas-Missouri boundary, was to provide, by technical means, a method by which dealers might account for the Missouri equivalent of two cents per gallon, instead of the Arkansas rate. We think the design was to do indirectly what could not be done directly.[1]

A subterfuge more transparent would be difficult to conceive and execute. To whatever extent a town's growth, immediate or prospective, may create need for leeway, courts will not interfere; but expansion ought not to be substructured upon avoidance of taxation.

We are not insensible to the personal equation activating individuals in procuring customers. No reproach is imputed to those who persisted in efforts to create a status satisfactory to the law. The end, however, cannot be realized by reaching out, lasso-like, to harness space. Territorial utility must bear some relation to corporate needs.

Appellant is not without capacity to question the commissioner's acts. Her interest is that of a citizen who has proceeded after the attorney general had ruled consonant

---

[1] In May, 1941, corporate lines were extended. The original town of Omaha covered the northeast quarter of the northeast quarter of section twenty-seven, township twenty-one north, range twenty-one west. Middleton's addition and subdivision to the town are in the north half of the southeast quarter of the northeast quarter, and the west half of the northeast quarter, and the east half of the northwest quarter. The "North Addition" and subdivision are described as the southeast quarter of the southeast quarter of the southeast quarter, and the north half of the southeast quarter of the southeast quarter, and the west half of the northeast quarter of the southeast quarter, and the east half of the northwest quarter of the southeast quarter, and the west half of the southeast quarter of the northeast quarter, and the east half of the southwest quarter of the northeast quarter, and the southwest quarter of the northeast quarter of the northeast quarter, and the southeast quarter of the northwest quarter of the northeast quarter, and the north half of the northwest quarter of the northeast quarter, all in section twenty-two, township twenty-one north, range twenty-one west; also the south half of the southwest quarter of the southeast quarter of section fifteen, township twenty-one north, range twenty-one west.

with appellees' contentions. These views, having been expressed in a written opinion, have not been disclaimed. It will be presumed the official did not intend to move contrary to what he conceived the law to be.[2]

The decree is reversed. Directions are that the commissioner cease permitting the differential of four and a half cents per gallon to be withheld.

Mr. Justice HUMPHREYS and Mr. Justice GREENHAW dissent.

---

[2] Act 383, approved March 26, 1941, is designated "Motor Fuel Tax Law." We do not discuss in detail administrative methods by which collections are made. For definitions, see § 2. Subdivision F(1) defines a distributor as one who first sells after the commodity reaches the state. F(2) includes one who consumes or uses within the state any motor fuel so imported, who shall have purchased the same before it shall have been received by any other person in the state, or (3) one who produces, refines, prepares, distills, manufactures, blends, or compounds motor fuel in this state. A retailer who is not a distributor does not pay the tax to the revenue commissioner unless he has purchased without the state. In that event he is both a distributor and a retailer; and, since he makes the first sale after the fuel reaches Arkansas, he must account for the tax. Section seven requires distributors to procure a license from the commissioner of revenues. The record in the instant case does not disclose any dealer who has the legal capacity to question the transactions in issue.