CHESAPEAKE & O. RY. CO. v. CITY OF SILVER GROVE.

Court of Appeals of Kentucky.

May 30, 1952.

Browning & Gray, Ashland, Odis W. Bertelsman, Newport, for appellant.

Benton, Benton & Luedeke, Newport, for appellees.

COMBS, Justice.

This appeal is a sequel to Chesapeake & Ohio Railway Company v. Murphy, 314 Ky. 309, 234 S.W.2d 969, 971. In that case we denied the Railway Company's application for a writ of prohibition to prevent the circuit judge from entering a judgment which would include the Company's railroad yards and terminal facilities within the incorporated limits of the proposed City of Silver Grove. The writ was sought on the ground that inclusion of the railroad yards within the boundaries of the proposed city would amount to an arbitrary taking of the Company's property in violation of the Fourteenth Amendment to the Constitution of the United States, and section 2 of the Constitution of Kentucky. It was alleged in the application that the statute under which the incorporators were proceeding, KRS 81.040–81.060, denied the Company the right of appeal, and it would thereby suffer irreparable injury for which it had no remedy at law. In the opinion denying the writ, we said:

> "Since the petitioner has specifically brought into the case a question as to the constitutionality of KRS 81.060, or a particular application of that statute and since, as said above, this is the only ground for any error in the proceedings, we have concluded an appeal will lie from a determination of the circuit court on that point. Therefore, the writ of prohibition is denied."

The case of Engle v. Miller, 303 Ky. 731, 199 S.W.2d 123, was cited as authority for the holding.

After the writ was denied by this Court, the circuit court entered judgment incorporating the town and including the Company's railroad yards within the corporate limits. The trial court had previously sustained a general demurrer to the Company's remonstrance and it had declined to plead further.

The only question now before us is whether the Company's remonstrance, accepted as true on demurrer, states sufficient facts to establish a taking of the Company's property in violation of the Constitution of this State or of the United States. We will summarize the allegations of the remonstrance:

The area sought to be incorporated into the proposed City contains 160 acres, of which 64 acres are owned by the Railway Company and can never be adapted to any municipal use; the real estate owned by the Company is solely and completely used for the operation of railroad yards and a railroad terminal, and all of same is covered by a system of railroad tracks and switches, a roundhouse, a refrigeration plant and other facilities used exclusively in the operation of the railroad yards and terminal; the state highway separates the land owned by the Company from the balance of the land sought to be included within the boundaries of the proposed City; on the real estate owned by the Company, no dwelling can ever be erected, and no street, sidewalk or sewer for municipal use can ever be constructed; the real estate is not adapted nor adaptable, and gives no promises of desirability, for use as sites for residences, factories, mercantile buildings or warehouses, and can never be adapted to any municipal use; the Company maintains and operates on the real estate its own lighting and electric power system, water system, and sewerage system; it also maintains its own fire department and its own police department. The Company will not derive any benefit from any lighting or electric power system, water system, sewerage system, fire department or police department which might be established by the proposed City; it is the purpose and intent of the incorporators of the proposed City, in including the Company's yards within the proposed boundary of the City, to subject the Company to municipal taxes thereby substantially reducing the amount of taxes to be paid by the remaining property owners within the City; the inclusion of the real estate within the boundaries of the proposed City will deprive the Company of

its property by the levy and collection of municipal taxes without any benefits to the Company; the Company will thereby be deprived of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and section 2 of the Constitution of Kentucky.

A map referred to in the remonstrance and filed as an exhibit shows all residences and buildings of the town, as well as all city lots, lie south of the railroad yards. The yards extend practically to the Ohio River on the north so there could be little, if any, expansion of the town in that direction. It also appears from the map that there is land suitable for municipal purposes south of the proposed town, but there is no attempt to include this land within the town boundaries.

There is no contention that the incorporators have not followed the terms of the statute. It is alleged in their petition that some 598 inhabitants reside within the proposed town, of whom 253 are voters. Of this number of voters, 213 signed the petition to incorporate. The Railway Company is the only remonstrant.

■ This Court has held that if the jurisdictional facts are present the circuit court has no discretion as to the establishment of the town. Pfeiffer v. City of Louisville, Ky., 240 S.W.2d 560; Engle v. Miller, supra, 303 Ky. 731, 199 S.W.2d 123, 124. But it was said in the Engle case: "When the specified conditions are found to exist, there is no further judicial discretion in the court. The court, in effect, merely declares the act of the Legislature to be operative. (Citing cases.) It is to this that the provision with respect to denying an appeal relates. Where in the same case there is presented the question of the constitutionality of an Act of the Legislature, which is independent in its nature, strictly judicial and one of great consequence, we do not believe that it was the legislative intent to prohibit an appeal. * * * *"

■ Appellees insists there is no attack on the constitutionality of the statute itself, and that the Railway Company has no right to maintain this appeal. They maintain that there is a distinction between a constitutional objection to the statute itself, and an objection on constitutional grounds to the application of the statute in a particular case. We fail to see any valid distinction. The test as to the constitutionality of any statute is whether it may be applied in a particular case in such manner as to deprive some person of a constitutional right. Babb v. Bullitt, 310 Ky. 211, 220 S.W.2d 394. If, according to its terms, it may be so applied, it is to that extent unconstitutional.

■ The Legislature has provided by statute a general plan under which towns may be incorporated. The statute does not attempt to define the character of the property that may be incorporated, but we will not assume the Legislature intended to authorize the incorporation into a municipality of property incapable of any municipal use, except to the extent that the incorporation of such property is incidental to the incorporation of other property which is or may be adaptable to that purpose. The words "city" and "town" imply that the real estate incorporated should be reasonably susceptible to municipal development, and that some benefits will be returned to the incorporated area. Such an interpretation has been given to these words by other courts and text-writers. Arnold v. McCarroll, 200 Ark. 1094, 143 S.W.2d 35; Waldrop v. Kansas City Southern Ry. Co., 131 Ark. 453, 199 S.W. 369, L.R.A.1918B, 1081; State ex rel. Patterson v. McReynolds, 61 Mo. 203; Commonwealth Real Estate Co. v. City of South Omaha, 78 Neb. 368, 110 N.W. 1007; Ewing v. State ex rel. Pollard, 81 Tex. 172, 16 S.W. 872; 62 C.J.S., Municipal Corporations § 9. Such a doctrine is not new in Kentucky. In the case of Stephens v. Felton, 1892, 99 Ky. 395, 35 S.W. 1116, the court had for consideration an act of the Legislature classifying a previously incorporated civil district as a town of the fifth class. Although the case was decided on other grounds, it was said that it would have been impracticable and oppressive to incorporate the proposed town, since a very large part of it was used for farming purposes. In the

case of Albershart v. Donaldson, 149 Ky. 510, 149 S.W. 873, 875, the court declared void an Act of the Legislature classifying the taxing district of Highlands as a fourth class city, since Highlands had never been incorporated as a city. In the course of the opinion it was said: " * * * the boundary should not be established so as to embrace within it land which may not be urban property in any sense of the word."

This same principle was invoked in City of Russell v. Ironton-Russell Bridge Co., 249 Ky. 307, 60 S.W.2d 628, to prevent the City of Russell from extending its city limits so as to include a bridge spanning the Ohio River. The decision was based on the proposition that property may not be included within the corporate limits of a city if it is not adapted and can never be utilized for some municipal use. This was an annexation case and it is true, as pointed out by appellee, that there is a difference between the incorporation statute and the annexation statute. In the application of the annexation statute the court has some discretion as to whether proposed property should be annexed, but the incorporation statute does not provide for any such discretion. The reasoning applied in the annexation cases, however, is, at least in principle, applicable to incorporation cases. If there is a constitutional prohibition it is the same in either case. Certainly the two statutes have one thing in common: neither can be applied in such manner as to deprive a person of a right guaranteed by the Constitution of this State or the United States.

█ The authorities cited above merely announce the general proposition that property which is not adaptable for any municipal use should not be included within the corporate limits of a city or town, either by annexation or incorporation. The decisions in those cases were not based on constitutional grounds, and none of them spells out the doctrine that the inclusion of such property is a violation of a constitutional right of the property owner. We now approach that specific question. An exhaustive discussion of the question may be found in Cheaney v. Hooser, 9 B.Mon. 330.

That was an annexation case involving the validity of the annexation of certain property by the City of Hopkinsville. But as pointed out above, in the determination of the constitutionality of the statute, or a particular application of the statute, the reasoning in annexation cases applies with equal force to this case. In the Cheaney case it was said:

" * * * If the extension of the limits of a town be a subject embraced within the general legislative power of the Commonwealth, it is within the power given to the General Assembly, and is an allowable subject of legislative action, unless it is interdicted by some provision of the State or Federal Constitution, *or unless its exercise in the particular case should violate some right secured by one or both of those instruments.*" (Our italics.)

It was also said:

" * * * The case must be one in which the operation of the power will be at first blush pronounced to be the taking of private property without compensation, and in which it is apparent that the burthen is imposed without any view to the interest of the individual in the objects to be accomplished by it. If it be so, no matter under what form the power is professedly exercised, whether it be in the form of laying or authorizing a tax or in the regulation of local divisions or boundaries, which results in a subjection to local taxes, and whether the operation be to appropriate the property of one or more individuals, without their consent, to the use of the general or local public, or to the use of other private individuals, or of a single individual, the case must be regarded as one coming within the prohibition contained in this clause, or the Constitution, is impotent for the protection of individual rights of property from any aggression, however flagrant, which may be made upon them, provided it be done under color of some recognized power. We are not prepared to concede that it is thus impotent. * * *"

The specific question was also discussed in the case of City of Covington v. Southgate, 15 B.Mon. 491. That also was an annexation case, but the reasoning is equally applicable here. We quote from the opinion:

"As Southgate has made no town upon his land and desires none, as there appears to have been no legitimate necessity which might justify the extension of the boundary so as to include it within the city against his consent, and as the obvious effect and probable purpose on the part of the city was to subject it to taxation for her own exclusive benefit, it would seem that if there can be a case of taking private property for public use in the form of taxation under color of an extension of the boundaries of a town or city, and without making compensation therefor, this must be regarded as one. That there may be such a case, is plainly admitted and clearly shown in the opinion of this court rendered in the case of Cheaney v. Hooser, 9 B.Mon 344 and 345. And in the page last cited one of the instances stated as an example of such a case is where it is 'palpable that persons or property are subjected to a local burden for the benefit of others, or for purposes in which they have no interest, and to which they are therefore not justly bound to contribute.' The case before us presents, as we think, the essential features of the case just stated. And the legislative establishment of declaration of the extended boundary having been procured by the city may be regarded as her act, though under the legislative sanction, of which she has taken or attempted to take the benefit by the tax imposed upon Southgate's land, *we think this is a case of taking private property for public use under the form of taxation, and that it is within the prohibitory clause of the constitution, and therefore unconstitutional and void."* (Our italics.)

The Railway Company has alleged that its property which is proposed to be incorporated in this proceeding is not adaptable to any municipal use, and that its inclusion within the town boundaries is for the purpose of imposing taxation upon the Company for the benefit of the other residents of the proposed town, and without any benefits to the Company or to the town except for the additional revenue. The facts alleged in the remonstrance, if true, substantiate the Company's allegations. We are unable to escape the conclusion, therefore, that inclusion of the property within the boundaries of the City, under these conditions, would deprive the Company of its property without just compensation, in violation of section 13 of the Constitution of Kentucky, and would constitute an exercise of arbitrary power over the property of the Company in violation of section 2 of the Constitution of Kentucky. It follows that the demurrer to the remonstrance should be overruled.

The Company insists that the case was submitted for final trial and judgment, and that our opinion should make final disposition of the controversy. We do not so construe the judgment. The demurrer to the remonstrance having been sustained, and the Company having declined to plead further, the court entered judgment incorporating the town. It is true the judgment recites that the cause was submitted on joint motion of the parties for judgment on the pleadings and exhibits, but we are of the opinion that under the circumstances the incorporators did not waive their right to take further steps in the case in event of a reversal by this Court. We merely hold that the demurrer to the remonstrance should have been overruled.

The judgment is reversed for consistent proceedings.