Affirmed.

Ed WHITE et al *v.* Leon LORINGS et al

81-125                                          623 S.W. 2d 837

Supreme Court of Arkansas
Opinion delivered November 16, 1981

*Christopher C. Mercer, Jr.,* for appellants.

*Rose Law Firm,* by: *Kenneth R. Shemin,* for appellees.

JOHN I. PURTLE, Justice. A petition to incorporate the town of Wrightsville pursuant to the provisions of Ark. Stat. Ann. § 19-101, et seq. (Repl. 1980) was rejected by the Pulaski County Court. The appeal to circuit court resulted in a trial de novo in which the petition was again rejected. On appeal to this court the appellants urged that (1) the trial court erred in holding that the amended petition did not satisfy the requirements of Ark. Stat. Ann. §§ 19-101 and 19-106; (2) the trial court erred in holding that much of the area proposed to be incorporated is agricultural or open and vacant and would not derive any benefit from incorporation, but would be subject to taxation; and, (3) the trial court erred in

holding that the area proposed to be incorporated is unreasonably large. We agree with the appellants for reasons to be explained below.

Pursuant to the rights granted by law more than 150 registered voters residing within the area designated as the town of Wrightsville, Arkansas, petitioned the county court for incorporation. During the time the matter was pending in the county court several petitions were added and certain changes were made in the geographical boundaries. On October 19, 1979, the county court denied the people the right to incorporate. Notice of appeal was filed November 9, 1979. The entire record was designated as the record on appeal. The case was heard de novo by the circuit court in piecemeal fashion commencing July 11, 1980. Testimony was taken and exhibits were introduced on that date, one of which was a map of the area proposed for incorporation. There was no question as to the accuracy of the map. Testimony indicated that the area proposed for incorporation was about two and one-half miles long and three-quarters of a mile wide on the average. The plat was subsequently amended leaving less than two square miles in the area proposed for incorporation. Testimony revealed there were 410 houses, 25 businesses, seven churches, one school and one post office within the area. There were 919 people living in the area.

At the hearing on July 11, 1980, several remonstrants were heard and they obtained an agreement to have part of the territory deleted from the proposed incorporation. A subsequent hearing was held on August 22, 1980, and the amended plat was marked and introduced into the record as Plaintiff's Exhibit No. 7. Four areas had been deleted from the original proposed area of incorporation. The remaining area in the proposed town of Wrightsville was approximately 900 acres (640 acres equals one square mile). After the area proposed for incorporation was redefined there was no testimony or evidence presented indicating the area was unreasonably large.

On September 2, 1980, the court announced that neither side wished to produce any additional testimony and the

court would take the matter under advisement. Briefs were filed by the parties.

On September 22, 1980, the court issued a memorandum opinion holding against incorporation of the area. This was reduced to judgment on November 12, 1980. The judgment recited that (1) the court was not persuaded that the petition for incorporation, as amended, satisfied the requirements of Ark. Stat. Ann. §§ 19-101 and 19-106; (2) much of the area, as amended to be incorporated, is agricultural or open and vacant and would not derive any benefit from incorporation, but would be subject to taxation; and, (3) the area to be incorporated is unreasonably large.

Ark. Stat. Ann. § 19-101 controls the matter of petitioning for the incorporation of a city or town. The statute requires that 150 qualified voters residing within the described territory may petition to be incorporated.

Ark. Stat. Ann. § 19-102 provides for a hearing by the county court on a petition for incorporation. It specifically provides that affidavits for and against a petition may be prepared for, submitted to and examined by the court. About the only limit placed in this provision is that the county court may not increase the area proposed for incorporation but may delete portions of land proposed for incorporation.

Ark. Stat. Ann. § 19-106 provides for a hearing in circuit court when the decision of a county court is appealed. This statute provides that the matter may be heard in a summary manner; receiving answers, affidavits and proofs, as may be deemed pertinent. The statute provides that the court shall not approve the incorporated area if it finds: (1) that the area does not contain the requisite number of inhabitants; or, (2) that a majority have not signed the petition; or, (3) that the area is unreasonably large or unreasonably small; or, (4) that the lands are not properly and sufficiently described.

The order of the trial court, as set out above, first stated that the court was not persuaded that the petition for incorporation satisfied the requirements of Ark. Stat. Ann. §§ 19-101 and 19-106. There was no other reason given at that point. The court further found that much of the area to be

incorporated is agricultural or open and vacant land and would not derive any benefit from incorporation but would be subject to taxation. Obviously, the court was taking into consideration the statutes which provide for annexation of territory to an already existing town. Indeed, Ark. Stat. Ann. § 19-307.1 provides that lands used only for agricultural or horticultural purposes and where the highest and best use of certain lands is for agricultural or horticultural purposes shall not be annexed. There has never been such a provision in the statutes governing the original incorporation of towns and cities. In fact, Act No. I of the Acts of the General Assembly of 1875 is still the controlling act relating to the incorporation of cities or towns. The third reason the court gave for denying the incorporation was that the area to be incorporated is unreasonably large. The area was described as containing approximately two square miles and 919 inhabitants. From looking at the aerial map and the map prepared by the land surveyor it is obvious that most of the land is occupied and developed. The only testimony presented relating to the area being unreasonably large was by Richard Stephens, a resident of Pulaski Heights in Little Rock, Arkansas. He stated that he was an MAI appraiser and a member of a number of professional organizations. In any event, he stated:

> Q. Based upon your on-site inspection and on your knowledge and training as an MAI inspector or appraiser, do you have an opinion as to whether the limits of the proposed incorporated town are unreasonably large?

> A. Well, I don't know that they're unreasonably large. I would — the density of population that's present in the area now would seem to me to be in a more restrictive portion of the area than it is according to these boundaries.

This testimony was elicited during the August 22, 1980, hearing prior to the time when the appellants eliminated the known farm land from the proposed incorporation area. After the agricultural land was eliminated, there was no testimony in the record stating that the area was unusually

large. Therefore, the only conceivable basis for this holding was Plaintiff's Exhibit No. 7. As we view Plaintiff's Exhibit No. 7 it shows almost the entire area to be developed into subdivisions containing a significant number of structures.

What is referred to as the original town of Wrightsville was platted and filed for record on July 29, 1881. The town of Tafton was platted on October 23, 1899, and an addition was added on May 21, 1914. The area between Tafton and Wrightsville was platted as the Mary E. Jones Subdivision in 1924. Thus, the majority of the area proposed for incorporation has been platted in town lots since 1924. The only time we have considered an area to be unreasonably large appears to be in *Arkansas and Ozark Railway* v. *Town of Busch,* 223 Ark. 27, 364 S.W. 2d 54 (1954). In *Busch* the facts revealed that there was a strip of land one-quarter of a mile wide and approximately three miles long which connected the store and land owned by Mr. Huffman to the Missouri state line. The whole area contained only 21 inhabitants. The express purpose was to allow Mr. Huffman to sell gasoline at Missouri prices because he would be in a town adjoining the Missouri boundary. This situation does not compare in any manner to the case before us. Although there is no definition for "unreasonably large" or "unreasonably small," we have to use common sense in passing judgment upon such matters. In considering an approximately two square mile area containing more than 900 people with its own post office, school and over 400 other buildings, we are of the opinion that the area does not fall within the definition of unreasonably large. Therefore, the court should have allowed the incorporation.

The case is remanded to the trial court with directions to permit the incorporation of the town of Wrightsville.

Reversed and remanded.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. In my judgment this is a case that could have been decided either way by the county and circuit courts, but both lower courts found

that the petition should be denied. On appeal we must uphold those decisions unless we can say that they were clearly erroneous. Ark. Civ. P., Rule 52.

There are two major flaws in the majority's judgment. First, the opinion conveniently ignores the fact that Arkansas law gives the trial court some discretion in granting or denying a petition to incorporate. Ark. Stat. Ann. § 19-103 (Repl. 1980) reads:

> *If the County Court shall be satisfied, after hearing such petition, . . . it shall . . . be deemed right and proper, in the judgment and discretion of the Court, that said petition shall be granted . . . .*[Emphasis added.]

This language can only mean that incorporation is not automatic, to be granted if form only is satisfied — if enough names are on a petition and if a map is filed. It is always a question of whether it is "right and proper" to grant an incorporation petition. Our cases bear this out. What is deemed right and proper has been discussed in several cases. It is not right and proper to incorporate solely to tax land. *Waldrop* v. *Kansas City Southern Railway Company,* 131 Ark. 453, 199 S.W. 369 (1917). Whether land is suited for "municipal purposes" is a consideration. Agricultural and timber lands are not such lands. *McCarroll, Comm. of Revenues* v. *Arnold,* 199 Ark. 1125, 137 S.W. 2d 921 (1940). Another consideration is whether the proposed limits of the town are unreasonably large. *Arkansas and Ozark Railway* v. *Busch,* 223 Ark. 27, 264 S.W. 2d 54 (1954).

All of these factors have been recognized as legitimate considerations in a decision regarding incorporation. Every one of these was considered by the two trial courts in their decisions.

From the testimony of the witnesses one cannot help but conclude that there were other solid reasons for not granting the petition. Michael Garman testified that he had lived in Wrightsville twenty-nine years and was a property owner. He opposed incorporation because of lack of

planning; he did not see how the "town" could be sup-
ported; he did not know where the money was coming from
and, furthermore, he knew that not all the citizens of
Wrightsville wanted incorporation. It was stipulated that
Nell Higgins, Betty Flowers, George B. Walton, J. B.
Morgan, Lon Lorings and Charles Washington would
testify to the same effect.

A proponent of the plan, Charles Tatum, who owns a
liquor store in Wrightsville and helped conduct the ques-
tionable survey, said he favored incorporation because they
needed improvements: Police protection, fire protection,
recreation, health services, streets and water. But he seemed
to have no conception of how those improvements would be
paid for. When pressed, he answered:

A. No. I ain't saying nothing about raising no
revenue.

Q. Well, what do you feel — how do you obtain
services without raising revenue?

A. How do you obtain services —

Q. How do you — how are you going to obtain these
services for your town without the money? Where's the
money going to come from?

A. The money's going to come from the people.

Q. How are the people going to get it?

A. I don't know how they're going to get it.

Q. Are they going to be taxed?

A. I don't think so.

Q. Well, where's the money going to come from?

A. Well, the money's got to come from the people.

Q. Okay. I won't belabor the point. I think you've made it for me.

A. See, because whatever you want, we know we've got to pay for it.

Q. Okay.

A. If we get any kind of improvements, we know we got to pay for it.

Q. Okay. Are people just going to come give money to make those things happen?

A. Well, I think that the point you want to ask is are we going to raise taxes.

Q. No.

A. I'm saying no. We ain't going to raise taxes.

Q. Okay. Where is the money going to come from?

A. But to pay for some of these improvements, we might — one of the best ways to collect this money from each individual is to put it on your tax bill.

Q. Okay.

A. But we won't raise no taxes.

Q. Okay.

A. We'll probably pay for some out of improvements on your tax bill, but I'm saying we won't be raising no taxes.

The lower courts found the area "unreasonably large," a finding that I cannot say is clearly wrong, not if the fact finders are given any say in the matter. But the majority, totally ignoring the prerogatives of the lower courts and totally ignoring the legal discretionary power of those

courts, has substituted its judgment for that of the lower courts, saying: "We are of the opinion that the area does not fall within the definition of unreasonably large." Therein lies the second major flaw in the majority's decision. The majority is acting like a trial court, substituting its judgment for that of two courts that are charged to determine the facts and use their discretion. In my judgment the majority has not only departed severally from the dictates of the statutes and our prior decisions but has also exceeded its authority. Obviously the lower courts were not satisfied in this case that it was right and proper to grant incorporation for any number of valid reasons, all of which have been recognized by us as legitimate reasons for denying incorporation.

I respectfully dissent.