# BROWN *v.* RUSHING.

Opinion delivered January 18, 1902.

1. SCHOOL LANDS—AUTHORITY TO SELL.—Where the same person was sheriff and collector of the county, a sale by him of sixteenth section lands would be valid if he was authorized to make the same in either capacity. (Page 119.)

2. SUFFICIENCY OF PETITION—EVIDENCE.—Where the petition of the adult male inhabitants of the township, on which a sale of sixteenth section lands was based, was lost, the judgment of the county court approving the sale and tending to show that the statute had been complied with, being admitted without objection, was relevant and sufficient to support a finding that a proper petition was filed. (Page 119.)

3. PETITION—IRREGULARITY.—The fact that a petition for the sale of sixteenth section lands was addressed to the person who filled the offices of sheriff and collector in the former and not in the latter capacity is a mere irregularity not affecting the validity of the sale. (Page 119.)

4. PETITION—MAJORITY OF INHABITANTS.—The act of March 22, 1881, § 1, which provides that the inhabitants of a congressional township desiring the sale of the sixteenth section of such township, may, by written petition, "signed by a majority of the male inhabitants of such township," require the collector to sell the same, contemplates a petition signed by a majority of the adult inhabitants of the township. (Page 120.)

5. SCHOOL LANDS—SECOND OFFERING.—Under act of March 22, 1881, § 5, providing that if any tract of sixteenth section land "is not sold, it may be offered again, upon like notice, upon the first day of the next or any succeeding term of the county court," authorizes the sale of any tract of such land, if it was not sold at the time it was first offered, on the first day of any succeeding term of the county court. (Page 121.)

Appeal from Hot Spring Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

*Wood & Henderson,* for appellant.

The petition to Reese in 1882 conferred no authority on him to sell the land. The petition should have been addressed to the collector, and not to the sheriff. Acts 1881, 155; 37 Ark. 381; 33 Ark. 396; 31 Ark. 571. The term "inhabitant," as used in the statute, is broader in signification than "legal elector." Webst. Dict., "Inhabitant;" 132 Mass. 85; S. C. 42 Am. Rep. 424; 36 Ark. 178; 40 Ark. 290; 56 Ark. 110.

*Hill & Auten* and *George, W. Murphy, Attorney General,* for appellees.

All presumptions are in favor of the regularity of official acts. Jones, Ev. § 389; 116 Cal. 56; 92 Am. Dec. 526; 64

*ib.* 680; 85 *ib.* 428; 43 Ark. 296; 21 Ark. 582. The word "inhabitant" means, in the connection in which it is used in the statute, the same as "legal elector."

BATTLE, J. This action was brought in the Hot Spring circuit court by E. B. Toler, as collector of Grant county, against appellant, Joseph Brown, under the provisions of subdivision II, c. 139, Sand. & H. Dig. The complaint, omitting the caption, is as follows:

"Comes the plaintiff, E. B. Toler, as collector of Grant county, Arkansas, by his attorneys, W. D. Brouse and Hill & Auten, and complains of the defendant, Joseph Brown, and for cause of action says: That at the general election in 1894 he was duly elected sheriff and *ex-officio* collector of Grant county, Arkansas, and afterwards duly qualified as such, and has been acting as such ever since. That at and prior to the 1st day of July, 1895, section 16, township 5 south, range 15 west, was school land, subject to sale under the requirements of the law. That on said day, in the town of Sheridan, and in pursuance of notice duly advertised, plaintiff, as collector as aforesaid, offered separately for sale to the highest bidder three lots of 40-acre tracts of said land, as the law directs, after having divided and platted said section and numbered the 40-acre lots thereon from 1 to 16, substantially as shown in plat hereto attached, and marked Exhibit A, and made part hereof. The lots offered for sale as above stated were numbered 4, 12 and 16 on said plat. That at said offering the defendant bid for lot 4 on said plat the sum of $305, for lot 12 the sum of $370, and for lot 16 the sum of $120, which were the highest bids; and said lots were thereupon duly declared sold to defendant for said sums, respectively. But defendant failed and refused to pay any of said bids; and thereupon said lots were duly reoffered for sale, and the Hayward Timber Company became the purchaser of lot 4 at the sum of $52.50, and of lot 12 at the sum of $50, and lot 16 failed to sell at any price. The said Hayward Timber Company at said reoffering made the highest bid on said lots 4 and 12. That, in consequence of the said failure of defendant to pay his bids as aforesaid, the school fund lost $252.50 on lot 4; $320 on lot 12, and $120 on lot 16; making in the aggregate the sum of $692.50. Wherefore plaintiff asks judgment against the defendant for said sum of

$692.50, and interest thereon at 6 per cent. per annum from the 1st day of July, 1895, till paid.

"W. D. BROUSE and HILL & AUTEN,
"Attorneys for Plaintiff."

Appellant filed his answer to said complaint as follows, omitting caption:

"That he denies that the plaintiff gave legal notice of the sale of said land as stated by him. He denies that he divided the said land in 40-acre tracts, as required by law. He admits that he bid on lots 4, 12 and 16 as stated in said complaint, but he does not remember the amount of his bids on the respective lots, and he denies that he bid the sums on said lots as stated in the complaint. He admits that the said lots were struck off to him by the sheriff at said sale, and that he refused to pay for the same, but he has no knowledge or sufficient information upon which to form a belief as to whether the plaintiff offered said tracts again for sale as required by law, and he denies that he did so offer said tracts, and that the same at such offerings only brought the sums specified in said complaint. He admits that said lot 16 failed to sell as stated in said complaint, and he denies that plaintiff has any right of action against him by reason of such failure. Defendant further says that, after making the bids for the lands as herein stated, he became satisfied that the plaintiff had no authority to sell said land, and that the title which he would undertake to convey by said sale would be worthless, inasmuch as there had been no petition presented to the said plaintiff, as collector, signed by the inhabitants of the township in which said section of land was situated, as required by law, requesting the sale of said land, and that the said sheriff was selling said land wholly without authority of law. He denies that the said plaintiff complied with the law in advertising and making said sale, and he denies that he had authority to advertise and offer the said land for sale at the time and in the manner as stated in said complaint, and he says that the acts of the plaintiff in selling said land were wholly unauthorized and void, and for that reason he has no cause of action against him herein. Wherefore he prays judgment herein for his costs and for other relief.        "WOOD & HENDERSON,
"Attorneys for Brown."

On the 9th day of August, 1899, the death of Toler was suggested, and F. W. Rushing was substituted as plaintiff in his stead.

The case was then submitted to the court, sitting as a jury, in part, upon the following evidence:

First.  The deposition of E. B. Toler, taken in his lifetime, as follows: "I am sheriff of Grant county, and have been such sheriff for nearly three years.  I was elected in the year 1892.  On the first day of July term, 1895, of Grant county court, I, as sheriff of said county, offered for sale the sixteenth section school land in township 5 south, range 15 west, in Grant county.  I offered said land for sale in 40-acre lots at the courthouse in Grant county somewhere about 1 o'clock on Monday, the first day of said term of said county court.  One P. G. Gates, who represented Hayward Timber Company, bid for and was the highest bidder for lots 1, 2, 3, 6, 7, 8, 9, 10, 13, 14 and 15, and the same were sold to said Hayward Timber Company, and the certificates of purchase were issued by me to the Hayward Timber Company.  No petition of any kind was presented to me by the inhabitants of said township requesting the sale of said lands, and I never saw a petition from such inhabitants asking such sale.  I examined the records of the county court, and found that Sheriff Reese, former sheriff of this county, made a sale of a part of the sixteenth section land in 1882, under the law as contained in the acts of the legislature of 1881.  The only evidence of any kind that I had of such petition was an order of the county court, which appears on page 194 of the record of said court for the year 1882, and is in words and figures as follows:

" 'Tuesday morning, January 3, 1882.  Court met pursuant to adjournment, present and presiding as on yesterday, before whom the following were had, to-wit:  In the matter of the sale of sixteenth section land, township 5 south, range 15 west:  On this day comes S. D. Reese, the sheriff of Grant county, Arkansas, and files herein the following report:  "To the Honorable County Court, Grant county, Arkansas, January term, 1882, Hon. W. T. Poe, presiding:  In obedience to the petition of a majority of the legal electors of congressional township 5 south, range 15 west, and in accordance with an act of the last general assembly approved March 22, 1881, I advertised for sale, and on the first Monday, it being the 2d day of January, 1882, proceeded to offer for sale, the sixteenth section in said township, after having the same appraised as the law directs; and W. H. Wilson bid off, and was declared to be the highest and best bidder for, the southwest quarter of the northwest quarter and the northeast quarter of the south-

west quarter of said section, at $1.50 per acre, the same being three-fourths of the appraised value. * * * All of which is respectfully submitted.          S. D. REESE, Sheriff.' "

"And the court being well and sufficiently advised, it is considered, ordered and adjudged that the sale of the said land, and the action of S. D. Reese, be, and it is hereby, confirmed, except as to the recommendation herein."

Second: The deposition of S. D. Reese, as follows: "I was sheriff of Grant county in 1882, and sold two forties of the sixteenth section of township 5 south, range 15 west, and made the report which has been offered in evidence in this case, which was approved by the county court at the January term, 1882. I do not know where the petition is upon which I acted at the time, but I am satisfied that it was signed by a majority of the voters in said township, or I would not have acted on it. I have very little recollection about the matter, and when the question was first mentioned to me recently, I did not remember anything about it; but after seeing said order of the county court, and having my memory refreshed on the subject, I now remember that such a petition was presented to me. I do not know any name now that was signed to said petition, and cannot state the name of any person whose name was signed to it. I think none of the signers on the petition I acted on were boys. I would not have considered a petition with the names of minors on it. I don't know that said petition was signed by a majority of the male inhabitants of said township, but it was signed by a majority of the electors of said township. I went out of the sheriff's office about eight years ago."

Fourth. The evidence of W. D. Brouse, as follows: "I live at Sheridan, Grant county, and am a lawyer by profession. I was present when E. B. Toler sold the sixteenth section land in Grant county, on the 1st day of July, 1895. The sale was made at public outcry by E. B. Toler, as collector of Grant county, between 12 and 3 o'clock, and lots 4, 12 and 16 were struck off to Joseph Brown, and he failed to make his bids good, and said lots or tracts were offered for sale again by said Toler the next day between 12 and 3 o'clock, and I bought lots 4 and 12 for the Hayward Timber Company. Mr. Toler adjourned the sale on the 1st day of July, because there was not sufficient time on the 1st to finish the sale."

Fifth. The deposition of P. G. Gates, who testified that he was present at the sale of the sixteenth section made by Collector

Toler, in Grant county early in July, 1894, and bought some of the land as the agent of the Hayward Timber Company; that lots 4 and 12 were knocked down and sold to Mr. Joseph Brown; that he made a memorandum of the bids made by himself and Joseph Brown in pen and pencil on a plat of paper attached to his deposition as Exhibit A; that his bids were $5 less than the figures for which lots 4 and 12 were knocked down to Brown. "Brown bid $370 for lot 12, and $305 for lot 4, and they were knocked down to him for those figures. At the second offering of lots 4 and 12 on the following day, W. D. Brouse bid for me for the Hayward Timber Company."

Sixth. A transcript from the record of the county court of Grant county, as follows: "In the matter of sale of sixteenth section lands: On this day the report of E. B. Toler, collector of Grant county, Arkansas, of sale of sixteenth section lands, filed herein this day, is examined, and, it appearing that the collector aforesaid has in all things complied with existing laws in regard thereto, it is considered, ordered and adjudged that sale of said lands by said collector, and all his acts therein, be, and they are, approved and confirmed, and it is ordered that said report be spread upon the records of this court, which is accordingly done as follows, to-wit: 'Report of sale of sixteenth section lands situated in section sixteen, township five (5) south, of range fifteen west: The undersigned would report that, after advertising and having the following subdivision of said section appraised as the law directs, he did on the 1st day of July, 1895, the same being the first day of the July county court, proceed to sell the same, and said lands were sold to the following named persons, to-wit: Lots 4, 12, and 16 to Joseph Brown for seven hundred and ninety-five (795) dollars. The said Joseph Brown failing to perfect his bid by refusing to pay the amount of his bid, the sale was continued until July 2, 1895 (it being the second day of said court), whereupon I did, between the hours as prescribed by law, reoffer said lots 4, 12 and 16 of said section 16, and said lots 4 and 12 were sold to Hayward Timber Company for $52.50 and $50, respectively, making a total of one hundred and two and 50-100 dollars. The said lot 1 was not sold for want of a bidder. The expense of this sale was: Cost of confirmation, 75 cents; collector's commission on $102.50, at 2 per cent, $2.05. Leaving a net balance of $99.70 in my hands due the sixteenth section fund on account of this county.                    E. B. TOLER.' "

The court, over appellant's objections, made the following finding of facts, to which he at the time saved proper exceptions:

"S. D. Reese was sheriff and collector of Grant county at the time the petition to sell the land in controversy was presented to him in 1882; and he acted in offering and selling the lands embraced in the petition as collector, and not as sheriff. The petition presented to said Reese contained a majority of the adult male inhabitants of the township in which the land to be offered was situated. E. B. Toler, who made the sale of lands in controversy, was at the time sheriff and collector of Grant county, Arkansas, and acted in the matter of the sale as collector, and not as sheriff."

Appellant thereupon requested the court to make the following finding of facts, which the court refused, and defendant saved proper exceptions:

"The sale of a part of the 16th section made by Reese on the 3d day of January, 1882, was made by the said Reese as sheriff of Grant county on a petition presented to and passed on by him as sheriff. The petition upon which the sale was made by Reese in 1882 was signed by a majority of the legal electors of the township where the land was situated, but there is no evidence showing that said petition was signed by a majority of the male inhabitants or of the adult male inhabitants of said township. The sale of the land out of which this controversy arose was made by E. B. Toler as sheriff of Grant county in 1895."

Appellant also requested the court to make the following declarations of law, which were refused, and appellant saved proper exceptions:

"(1.) E. B. Toler had no authority as sheriff or collector of Grant county, in 1895, to sell the land in the sixteenth section under the petition presented to S. D. Reese, as sheriff, in 1881 or 1882.

"(2.) The petition presented to S. D. Reese, as sheriff, in 1881 or 1882, conferred no authority on the said Reese to sell said land as sheriff.

"(4.) The sale by S. D. Reese, as sheriff, in 1882, was without authority; and the sale by Toler, as sheriff or collector, on the petition passed on by said Reese, as sheriff, was also without authority.

"(8.) There being no evidence in this case that there was no collector in Grant county at the time of the sale of the land by Toler, the said Toler had no authority to sell said land as sheriff."

The court on the 16th day of August gave judgment for appellee, and appellant on the same day filed his motion for a new trial, which was overruled, and he appealed.

Appellant assigns three errors, as follows:

"First. The circuit court erred in finding as a matter of fact, as requested by appellee, that S. D. Reese was collector of Grant county in 1882, and acted as such, and not as sheriff, in selling the land embraced in the petition then presented to him, and in refusing to find the converse of said proposition as requested by appellant.

"Second. The circuit court erred in finding as a matter of fact that the petition presented to S. D. Reese in 1882 was signed by a majority of the adult male inhabitants of the township in which the land to be sold was situated, as requested by said appellee, and in refusing to find the converse of said proposition as requested by appellant.

"Third. The circuit court erred in refusing to declare as law ·of the case that the petition presented to S. D. Reese in 1882 conferred no authority on said Reese to sell in 1882 either as sheriff or collector, and said petition conferred no authority on Toler to sell in 1895."

We shall consider these alleged errors in the order stated.

1. The court did not err in finding and holding that Reese was collector of Grant county in 1882. He was sheriff and *ex-officio* collector of that county. There is no evidence that he had forfeited the office of collector at that time. Being sheriff and collector, the sale of the land by him in 1882 was by authority, if he was authorized to make the same in either capacity. *Budd* v. *Bettison,* 21 Ark. 582; *Keith* v. *Freeman,* 43 Ark. 296.

2. Appellant insists that the evidence was not sufficient to show that the petition to Reese, the collector, for the sale of the sixteenth section, in township 5 south, and in range 15 west, was signed by a majority of the adult male inhabitants of that township. Reese testified that he did not know that it was signed by a majority of the male inhabitants, but it was signed by a majority of the electors of the township. He could not remember whether it was signed by a majority of the male inhabitants. The petition being lost, the judgment of the county court of Grant county, in which the land in question lies, was read as evidence to show that

the sale of the same was legal and approved. The judgment was read without objection, and as it tended to prove that the statutes prescribing upon what conditions, and the manner in which, the sale should be made, were complied with, the court sitting as a jury had the right to regard it as legitimate and proper for that purpose. *Frauenthal* v. *Bridgeman,* 50 Ark. 348.

Under the law, it was the duty of Reese, the collector, to report the sale to the county court of Grant county for investigation, and it was the duty of that court to ascertain whether the sale had been made by authority and in conformity with the law. Reese, the collector, did so, and the county court approved the sale. This necessarily implied that the sale was made upon a petition of the majority of the adult male inhabitants of the township, and in the manner prescribed by law. The order of the county court was therefore sufficient to sustain the finding of facts by the court as to the sufficiency of the petition for the sale.

3. It is insisted that the petition presented to Reese did not confer upon him the authority to sell, because it was directed to him as sheriff. But we do not think that this defect affected the authority to sell. He was sheriff and collecter. He was asked to sell the land. Upon a proper petition, he could do so in his capacity of collector. The petition asked for the exercise of that power. The address of it to him as sheriff was a mere mistake in the form of it, which did not affect its sufficiency.

The act entitled "An act to provide for the sale of the sixteenth section in this state," approved March 22, 1881 (Acts 1881, p. 154), under which Reese, the collector, sold, provides, that "whenever the inhabitants of any congressional township in this state shall desire the sale of the sixteenth section of such township, * * * they may, by written petition, signed by a majority of the male inhabitants of such township, require the collector of taxes of the county wherein such school land is situated to sell the same," and that "upon the reception of such petition the collector shall ascertain that it is signed by a majority of the male inhabitants of such township," and that it shall be his duty to sell when he ascertains that it was signed by such majority. Will a majority of the adult male inhabitants be sufficient?

The word "inhabitant" has many meanings. It has been construed to mean an occupier of lands; a resident; a permanent resident; one having a domicil; a citizen; a qualified voter. Its

construction has generally been governed by the connection in which it has been used. In *Walnut* v. *Wade,* 103 U. S. 683, the construction of an act was involved which authorized towns and cities to subscribe for stock in railroad companies, with the consent of the inhabitants of such city or town, to be ascertained by an election held for that purpose. The court held that the word "inhabitant," in that act, meant legal voters. In that case the meaning of the word was determined to some extent by the nature of the act to be done. In this case it should be determined in the same manner.

Under the statutes of this state a male person under the age of twenty-one years is incapable of managing his estate, or absolutely binding himself for the payment of money for anything except necessaries. He cannot devise his lands, nor participate in the annual school meetings, nor vote in any election. As a general rule, he cannot do any act necessary to be done in the management and disposition of his lands, except subject to avoidance or ratification when he reaches the age of twenty-one years. In view of these laws, he was certainly not intended to be included in that class of inhabitants authorized to petition for the sale of a sixteenth section of land. The object of the act of 1881 in making a petition signed by a majority of the male inhabitants of a township necessary to procure such sales was doubtless for the purpose of enabling them to protect the interest of their township in such land; and this precludes the idea that any person the law presumes and pronounces, and is generally known to be, incompetent to perform not provide for its own defeat, and it would tend to do so if it included infants in the word "inhabitants." For in that event it would make the child in arms and male persons of all ages competent petitioners, and in some cases place it within the power of children to control such sales, and thereby rob the townships of the safeguards it intended to throw around them. If such was its intention, why were females, and especially adults, excluded? No such construction can reasonably be placed upon the act.

Appellant contends that Toler, as collector, had no authority to sell the land in question in 1895 under the petition presented to Reese in 1882. This contention is based upon that section of the act of 1881 which provides that if "any tract (school land) was offered and not sold, it might be offered again, upon like notice, upon the first day of the next or any succeeding term of the county

court, and so on offered until sold, without a new petition." He insists that the words "the next or any succeeding term of the county court, and so on offered" should be construed to mean that the land should be offered at each succeeding term of the county court until sold. We do not think so. It should be construed in that way if the language had been, "if any tract was offered and not sold, it might be offered again, upon like notice, upon the first day of the next and every succeeding term of the county court, and so on offered until sold, without a new petition." But "or" does not mean "and," but "either," and "any" does not mean "every," but "one indifferently." We think that the act of 1881 authorizes the sale of any tract, if it was not sold at the time it was first offered, on the first day of any succeeding term of the county court.

Judgment affirmed.

HUGHES and WOOD, JJ., dissent.