William A. DUNKUM et al *v.*
R. C. MOORE et al

78-290                                  580 S.W. 2d 183

Opinion delivered April 23, 1979
(In Banc)

*Purtle, Osterloh & Weber,* by: *John I. Purtle,* for appellants.

*Patten, Brown, Leslie & Davidson,* by: *Robert B. Leslie,* for appellees.

CONLEY BYRD, Justice. A petition containing the signatures of 227 registered voters was filed for the incorporation of Shannon Hills. The county court heard the matter and entered an order approving the proposed incorporation of the designated areas as Shannon Hills. Appellants William A. Dunkum, et al., pursuant to Ark. Stat. Ann. § 19-105 (Repl. 1968) and within the proper time, filed a petition for an injunction to prevent the incorporation, alleging that (1) the legal description was incorrect, (2) a majority of the in-

habitants of the area proposed for incorporation did not sign the original petition and (3) the governing body of a town within three miles of Shannon Hills did not affirmatively consent to the incorporation. After hearing proof only with reference to the number of qualified voters and the number of inhabitants residing within the area, both appellants and appellees moved for a ruling in their favor. From a judgment of the trial court denying the petition for injunction, appellants appeal, contending:

POINT I. A majority of the inhabitants in the area proposed for incorporation did not sign the petition.

POINT II. The legal description and notice were incorrect thereby voiding the action for lack of notice.

POINT III. The city of Alexander did not legally consent to the incorporation.

The Saline County Clerk, George Ramsey, testified that he was familiar with the proposed area to be annexed, that it lay within two voting precincts — Otter "A" and Otter "B" — and that there would be no way of knowing for sure how many registered voters resided in the area. However, based upon his knowledge of the area, the people who came into his office from the area, the voter registration records kept in his office and his experience based upon the records, Mr. Ramsey estimated that there would be between 410 and 414 registered voters residing in the area proposed to be incorporated. Mr. Ramsey stated "that probably would be as close as you can get as far as an educated guess."

The testimony of appellant Dunkum showed that he had actually counted 448 residences in the proposed area and that, based upon a census report showing 3.32 persons per household, he calculated there would be 1,466 inhabitants, including children and imbeciles, in the area. The testimony of Jean Higgins, an employee of Shannon Hills Water Company, showed that there were 444 water meters in operation when the petition was filed.

POINT I. Appellants contend that the term "inhabitants" in Ark. Stat. Ann. § 19-101 (Supp. 1977) and

Ark. Stat. Ann. § 19-106 (Repl. 1968) must be construed to mean residents — *i.e.* include children and imbeciles. For the reasons hereinafter stated, we construe the term "inhabitants" as used in the subject statutes to mean qualified voters residing within the proposed town.

Ark. Stat. Ann. § 19-101 (Supp. 1977), in so far as pertinent, provides:

"When the inhabitants of a part of any county, not embraced within the limits of any city or incorporated town, shall desire to be organized into a city or town, they may apply by petition, in writing, signed by not less than one hundred fifty (150) qualified voters residing within the described territory, to the county court of the proper county, which petition shall describe the territory proposed to be embraced in such incorporated town, and have annexed thereto an accurate map or plat thereof shall state the name proposed for such incorporated town, and also name the person or persons authorized to act in behalf of the petitioners in prosecuting said petition. The county court shall not approve the incorporation of any municipality if any portion of the territory proposed to be embraced in such incorporated town shall lie within three (3) miles from the corporate limits of an existing municipal corporation unless the governing body of said municipal corporation has by written resolution affirmatively consented to said incorporation. . . ."

Ark. Stat. Ann. § 19-103 (Repl. 1968), provides for a hearing to be held before the county court, and Ark. Stat. Ann. § 19-105 (Repl. 1968), gives anyone opposed to the incorporation the right to file a complaint in the circuit court for purpose of having the incorporation by the county court annulled. Ark. Stat. Ann. § 19-106 (Repl. 1968), provides:

"It shall be the duty of the court or judge to hear such complaint in a summary manner, receiving answers, affidavits and proofs, as may be deemed pertinent; and if it shall appear to the satisfaction of the court or judge that the proposed incorporated town does not contain the requisite number of inhabitants, or that a

majority of them have not signed the original petition, or that the limits of said proposed incorporated town are unreasonably large or small, or are not properly and sufficiently described, then the said court or judge shall order the record of said incorporated town to be annulled; . . ."

Acts 1975, No. 635 (Ark. Stat. Ann. § 19-101, *supra*), provides that, "When the *inhabitants* of a part of any county . . . shall desire to be organized into a city or town they *may apply by petition in writing signed by not less than one hundred fifty ( 150) qualified voters* residing within the described territory. . . ." Likewise, Ark. Stat. Ann. § 19-106, *supra*, provides that if it shall appear to the satisfaction of the court or judge that the proposed incorporated town does not contain "*the requisite number of inhabitants* or that *a majority of them has not signed the petition*," then the judge shall annul the incorporation by the county court.

Simple sentence structure shows that the 1975 Act, *supra*, [Ark. Stat. Ann. § 19-101] qualified the term "inhabitants of a part of a county" to be qualified voters because it says that the inhabitants "may apply by petition . . . signed by not less than one hundred fifty (150) qualified voters residing within the described territory. . . ." Furthermore, the provision of Ark. Stat. Ann. § 19-106, *supra*, which authorizes the circuit court to annul the incorporation when it appears to the satisfaction of the court "that the proposed incorporated town does not contain the requisite number of inhabitants or that a majority of them have not signed the original petition. . .," must refer back to the term "inhabitants" as used in Ark. Stat. Ann. § 19-101, *supra*. Since Ark. Stat. Ann. § 19-101, *supra*, authorizes the inhabitants to petition through qualified voters and Ark. Stat. Ann. § 19-106, *supra*, refers to "a majority of them [who] have not signed the original petition," the term majority can only refer to the persons authorized to sign the petition — *i.e.* qualified voters.

In *Town of Wrightsville* v. *Walton,* 255 Ark. 523, 501 S.W. 2d 241 (1973), the argument made was that since Ark. Stat. Ann. § 19-101 then permitted the inhabitants to petition by 20 qualified voters, the proposed incorporators could incorporate by showing that of the 20 signers on the petition, only

11 had to be qualified voters. We were not there required to interpret what the term inhabitant meant.[1]

In *Town of Walnut* v. *Wade,* 103 U.S. 683, 26 L. Ed. 526 (1880), there was before the court an Illinois Act which provided that a city or town could issue bonds for railroad stock when the amount thereof had been "first submitted to the inhabitants of such city . . . and approved by them; and upon application of any ten voters . . . it shall be the duty of the clerk . . . to immediately call an election. . . ." In answer to the contention that the term inhabitants should include children and imbeciles the court stated: "To require the approval by a vote of the 'inhabitants' in this sense would be an absurdity."

In *Brown* v. *Rushing,* 70 Ark. 111, 66 S.W. 442 (1902), we had before us an act approved March 22, 1881, providing for the sale of school lands "whenever the inhabitants of any congressional township in this state shall desire the sale of the sixteenth section of such township . . . they may by petition, signed by a majority of the male inhabitants of such township, require the collector of taxes of the county wherein such school land is situated to sell the same," and that "upon reception of such petition the collector shall ascertain that it is signed by a majority of the male inhabitants of such township." In concluding that male inhabitants under the age of 21 years· should not be counted we said:

> "The word 'inhabitant' has many meanings. It has been construed to mean an occupier of lands; a resident; a permanent resident; one having a domicil; a citizen; a qualified voter. Its construction has generally been governed by the connection in which it has been used. In *Walnut* v. *Wade,* 103 U.S. 683, the construction of an act was involved which authorized towns and cities to subscribe for stock in railroad companies, with the consent

---

[1] The trial court in *Wrightsville* v. *Walton, supra,* with reference to the statute stated: "This simply means that upon its adjudication in Circuit Court, the court must be satisfied that a majority of the qualified voters inhabiting a proposed town must have indicated their preference for incorporation upon the initial petition filed in the County Court." The appellee for affirmance also contended that inhabitant simply meant qualified voters. See brief filed on behalf of Fred Walton.

of the inhabitants of such city or town, to be ascertained by an election held for that purpose. The court held that the word 'inhabitant,' in that act, meant legal voters. In that case the meaning of the word was determined to some extent by the nature of the act to be done. In this case it should be determined in the same manner.

Under the statutes of this state a male person under the age of twenty-one years is incapable of managing his estate, or absolutely binding himself for the payment of money for anything except necessaries. He cannot devise his lands, nor participate in the annual school meetings nor vote in any election. As a general rule, he cannot do any act necessary to be done in the management and disposition of his lands, except subject to avoidance or ratification when he reaches the age of twenty-one years. In view of these laws, he was certainly not intended to be included in that class of inhabitants authorized to petition for the sale of a sixteenth section of land. The object of the act of 1881 in making a petition signed by a majority of the male inhabitants of a township necessary to procure such sales was doubtless for the purpose of enabling them to protect the interest of their township in such land; and this precludes the idea that any person the law presumes and pronounces, and is generally known to be, incompetent to perform such acts, should form any part of the majority. The act does not provide for its own defeat, and it would tend to do so if it included infants in the word 'inhabitants.' For in that event it would make the child in arms and male persons of all ages competent petitioners, and in some cases place it within the power of children to control such sales, and thereby rob the townships of the safeguards it intended to throw around them. If such was its intention, why were females, and especially adults, excluded? No such construction can reasonably be placed upon the act."

The county clerk estimated that there were no more than 410 or 414 registered voters in the area proposed to be incorporated. If we follow appellants' contention that the word "inhabitants" is equivalent to population, keeping in mind that only qualified voters are allowed to sign the petition, an

anamolous result ensues. The circuit court in this case would have been required to annul the incorporation approved by the county court upon a petition signed by all 410 registered voters upon a mere showing that the total population — including children and imbeciles — was 1411 people. Even a showing of the proponents by calling all of the 1411 people in the area old enough to talk except appellant Dunkum to testify that they desired the area to be incorporated would not suffice, because the statute permits only qualified voters to sign the petition and then specifically requires that the petition be signed by a "majority" of the inhabitants. Appellants' contention that the term "inhabitants" should be construed to include children and imbeciles is just as absurd as that proposed in *Town of Walnut* v. *Wade, supra.*

Appellants under this point also contend that appellees never proved that a majority of qualified voters in the proposed area signed the petition. We find no merit to this contention. In the first place, appellants in the trial court admitted that the burden of proof was upon them. In the second place the testimony of the county clerk as to the number of qualified voters in the area — *i.e.* 410 to 414 — was properly admitted, whether the testimony of the county clerk be considered opinion testimony of a lay witness, or an opinion of an expert. See Ark. Stat. Ann. § 28-1001, Rule 701 et seq.

POINT II. Appellants concede that there is evidence from which the trial court could conclude that the description in the petition was correct as filed. However, they contend that because the published notice used township 3 instead of township 1, the erroneous legal description in the published notice voids the incorporation. We disagree with appellants because Ark. Stat. Ann. § 19-101 (Supp. 1977) only requires the published notice to contain the substance of the petition and the time and place of the hearing thereof. The published notice here complied with those limited requirements.

POINT III. Finally, appellant contends that the City of Alexander did not legally consent to the incorporation — *i.e.* it did not affirmatively consent by written resolution as required by Ark. Stat. Ann. § 19-101 (Supp. 1977). Appellants did not ask the trial court to rule upon this issue, and of course we will not consider an issue raised for the first time on

appeal. Furthermore, the burden of proof was admittedly upon appellants, and any failure of the record to contain any evidence on the issue is chargeable to the appellants rather than the appellees. In other words, the burden was upon appellants to show no consent by written resolution was obtained from the City of Alexander.

Affirmed.

FOGLEMAN and HOLT, JJ., dissent.

PURTLE, J., not participating.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree with the majority's construction of the governing statute. In my opinion, there is no substantial evidence that a majority of the inhabitants had signed the petition for incorporation. Under Ark. Stat. Ann. § 19-106 (Repl. 1968), the circuit court was required to annul the incorporation if it appeared to its satisfaction that a majority of the inhabitants had not signed the petition. *Town of Wrightsville* v. *Walton,* 255 Ark. 523, 501 S.W. 2d 241.

The trial judge's decision does not indicate its basis or his interpretation of the statute. I do not agree with the majority's sustaining the judgment on its interpretation that the word "inhabitants" in Ark. Stat. Ann. § 19-106 means "qualified electors." An inhabitant is a person who resides or dwells permanently in a place, as distinguished from a transient lodger or visitor. Webster's 3rd New International Dictionary; Webster's New International Dictionary, 2d Edition. See also, Black's Law Dictionary (DeLuxe 4th Ed.), p. 921. This was the meaning given this word in *Wilson* v. *Lawrence,* 70 Ark. 545, 69 S.W. 570. Many meanings have been given the word, such as, an occupier of lands, a resident, a permanent resident, one having a domicile, a citizen, a qualified voter; however, the word should be accorded its ordinary meaning unless the context in which it is used or the nature of the act to be done is such as to indicate that the legislature intended that it be given some other meaning. See *Brown* v. *Rushing,* 70 Ark. 111, 66 S.W. 442. We have excluded children when the word adult was used as a limiting adjective. *Wilson* v. *Lawrence,* supra. We have also said that children are ex-

cluded when the act involved required the signatures of a majority of the *male* inhabitants, partly because the nature of the proceedings was such that it was illogical to include infant males and exclude females, especially those who were adults. *Brown* v. *Rushing,* supra. I find no indication that the General Assembly intended that the word inhabitants in this section of the statute be given anything other than its ordinarily accepted meaning, which requires that children and imbeciles be included, even assuming that their numbers are significant.

It is true that in some cases the word "inhabitants" is taken to mean qualified electors. Of course, the context demands that it be given that meaning when an election is involved. No election is involved here. I have already pointed out the contrast which dictated the result in *Brown* v. *Rushing,* supra, quoted in the majority opinion. It is also significant, however, that the "nature of the act" there was the sale of lands, and particular emphasis was given in the opinion in *Brown* to the fact that, generally, a minor male "cannot do any act necessary to be done in the management and disposition of his lands."

Furthermore, I cannot agree with the interpretation given *Town of Wrightsville* v. *Walton,* supra. In order to attempt to distinguish this case, the majority resorts to information not available to the bench, bar and public who read the opinion. Nor do I agree with appellees' argument that Act 635 of 1975 makes the case cited inapplicable. The amendment simply changed the language of § 19-101, so that, instead of requiring a minimum of 20 qualified voters of the area as petitioners for incorporation, regardless of the total number of inhabitants, a minimum of 150 qualified voters is now required. The requirement that the incorporation be annulled in the circuit court if a majority of the inhabitants did not sign the petition was not affected in any way by this act. In the *Wrightsville* case, we said:

> We have no way of knowing why the legislature provided that articles of incorporation can be granted by the county court upon petition of twenty qualified electors and then provides that if complaint is timely filed in circuit court, the signatures of a majority of the in-

habitants would have to be shown. Nevertheless, we are unable to arrive at any conclusion other than § 19-106 requires the signatures of a majority of the inhabitants. We would point out that the proceeding in circuit court is not an appeal from the county court. The jurisdiction of the circuit court is invoked by the filing of a complaint which, of course, constitutes an entirely new proceeding.

I point out that there is *no* statutory requirement that *only* qualified electors sign a petition for incorporation. It is only required that there be a *minimum* of 150 qualified electors included among the signers.

The meaning of a statute must be determined from the language used by the legislature, rather than by speculation as to its unexpressed intention. " 'The question for the interpreter is not what the Legislature meant, but what its language means.' " *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S.W. 656.

If the General Assembly intended that inhabitants mean qualified electors, it should have said so. The very use of the different terms indicates to me that the legislature intended that they be given different meanings. This is a general rules of statutory construction. See 73 Am. Jur. 2d 417, Statutes, § 236; 82 CJS 638, Statutes, § 329.

Pertinent illustrations of the application of the rule are found in *Nelson* v. *Union Wire Rope Corp.,* 31 Ill. 2d 69, 199 N.E. 2d 769 (1964); *Jackson State National Bank* v. *Merchants' Bank & Trust Co.,* 177 La. 975, 149 So. 539 (1933); and *Metropolitan Life Ins. Co.* v. *Mason,* 21 F.S. 704 (E. D. Penn. 1937), rev'd. on other grounds, 98 F. 2d 668 (3 Cir., 1938). In the first case cited, the Illinois Supreme Court said:

> Similarly, the use of the word "employer" in some sections of the act, while using the words "employer, or his insurer" in others, has significance under the rules of construction which state that words employed are to be given their plain meanings, and that the use by the legislature of certain language in one instance and wholly different language in another indicates that different results were intended. ***

In the second, the court approached the matter by applying the general rule that no sentence, word or clause should be constructed as without meaning and as surplusage, if a construction can be legitimately found which will give force and effect to, and preserve, all the words of the statute, and said:

> *** In applying this rule, where possible, the same meaning should not be given to two distinct words, and thereby make one of them a useless repetition of the other, but the appropriate meaning should be given each word with the end in view of giving full effect to the legislative intent.

In the last, the court said:

> *** Giving effect to the canon of statutory construction that each word in the statute must be given a distinct meaning if possible, we construe the word "value" to mean the present or cash surrender value of the policy and the word "amount" to mean the face amount or the amount payable in case of death. ***

By applying basic general rules of construction, the words "inhabitant" on the one hand, and "qualified electors" on the other, should be presumed to have different meanings. There is nothing in the language of the statutes to indicate any legislative intent to the contrary.

R. C. Moore, who had resided at 11208 Shannon Hills Drive for two years, was one of the petitioners for incorporation. He testified that he had no idea how many inhabitants lived in the area. He said that no one except registered voters over 18 years of age signed the petition and that the signers represented 177 households. William A. Dunkum, one of the appellants, who lives at 14103 Sardis Road, had made an actual count of the dwelling houses in the area. He found 458, some of which were mobile homes. He exhibited a document from the Bureau of Census showing that in its Tract 104, which includes the area proposed for incorporation, there were an average of 3.32 residents per household. Using only 3.2 residents per household, he concluded that there were 1466 inhabitants of the area. He showed the location of each house on a map he prepared in October, 1977. Jean Higgins,

an employee of Shannon Hills Water Company, testified that in July, 1977, she sent water bills to 406 residences, and that the company did not serve all the area proposed for incorporation, but she knew of approximately 35 residences in the area to which water was furnished by "District 2," which bought water from the company on a wholesale basis. George Reissman, a witness for the incorporators, "guessed" that there were less than 500 residents of the area, but admitted that there could be 600 and that he didn't know how many there were.

Appellees seek to show that there was substantial evidence to support the circuit court's judgment in several ways, none of which have merit. First, they multiply the number of households (177) represented by the signers by 3.2 residents per household and say that this shows that they represented 587.64 inhabitants which was more than a majority of the inhabitants according to the testimony of Reissman. As a matter of fact, this would exceed Reissman's "guess" as to total population of the area. The fallacies in this approach are obvious. There is nothing whatever in the statutes on incorporation indicating that a single signer, or any number less than all those living in a household, represents or binds everyone in the household. This would be necessary in order for us to sustain this rather unusual theory, for which appellees cite no authority. Furthermore, I do not consider Reissman's testimony to be substantial evidence of the number of households in the area. To be substantial, evidence must be valid, legal and persuasive. *Arkansas Pollution Control Com'n. v. Coyne,* 252 Ark. 792, 481 S.W. 2d 322. The conclusion of a witness is not substantial when he gives no satisfactory explanation how he arrived at it and leaves the fact finder to speculation and conjecture in arriving at its conclusion. *Arkansas State Highway Com'n. v. Byars,* 221 Ark. 845, 256 S.W. 2d 738. Reissman's testimony on this point was speculative, at best.

The only substantial evidence as to the number of inhabitants in the Shannon Hills area is the testimony of Dunkum and Higgins. The lowest number of households which would be indicated by this testimony is 441. The census figures, or at least the figure used by Dunkum, would indicate that there were 1411 inhabitants of the area. If this

were the case, then 706 signatures would have been required. Even if Reissman's guess were considered, for 227 signers to constitute a majority, less than 500 would have to be translated to mean 453 or less.

I note that the last portion of the petition necessary to the incorporation proceeding was filed June 8, 1977. The water company billings in July appear to have been the next billing after the filing of the petition. In spite of the fact that there was testimony that several houses are being built each month, there was no testimony that would indicate that the number of households in July, 1977, was more than double the number in that area as early as May 18, 1977, the first day any of the petitions were filed. This fantastic increase would have been necessary to a finding that 227 signers constituted a majority of the inhabitants calculated according to the only substantial evidence.

Appellees argue that appellants have no grounds for appeal to this court because they failed to ask that the trial court make specific findings of fact pursuant to Ark. Stat. Ann. § 27-1744 (Repl. 1962). None of the cases cited by appellees support that argument and I know of no authority that would.

I also disagree with the majority's treatment of the testimony of the county clerk. This testimony was not admitted in the trial court. Most of it constituted a proffer only. I agree with the trial judge that when the whole of this testimony is considered, it was rank speculation or the expression of an opinion only. It was without any satsifactory explanation, and should not be considered substantial evidence.

I would reverse the judgment.

I am authorized to state that Mr. Justice Holt joins in this opinion.