The Honorable Larry Goodwin State Representative Post Office Box 129 Cave City, Arkansas 72521-0129
Dear Representative Goodwin:
This is in response to your request for an opinion on ten questions regarding suburban improvement districts and the process to incorporate as a municipality. I assume that the suburban improvement district referred to in your letter was formed pursuant to the provisions of A.C.A. §§ 14-92-201 et. seq. As a general matter, it must be noted that definitive answers to certain of your questions will require the determination of factual issues which this office is neither equipped nor empowered to undertake. That being said, your questions are restated and addressed below in the order posed.
Question 1 — May a Suburban Improvement District (SID) incorporate? Underwhat process(es) may this incorporation occur?
It is my opinion that the people living within the boundaries of a suburban improvement district (SID) may incorporate in the same manner as inhabitants of any part of any county not embraced within the limits of any city or incorporated town.[1] The incorporation of cities and towns in Arkansas is governed by A.C.A. §§ 14-38-101—114 (1987 Supp. 1995). Op. Att'y Gen. No. 94-181; see also White v. Lorings, 274 Ark. 272,623 S.W.2d 837 (1981). Section 14-38-101 provides in part:
 (a)(1) When the inhabitants of a part of any county not embraced within the limits of any city or incorporated town shall desire to be organized into a city or incorporated town, they may apply, by a petition in writing, signed by not fewer than seventy-five (75) qualified voters residing within the described territory, to the county court of the proper county.
(2) The petition shall:
 (A) Describe the territory proposed to be embraced in the incorporated town and have annexed to it an accurate map or plat thereof;
(B) State the name proposed for the incorporated town; and
 (C) Name the persons authorized to act in behalf of the petitioners in prosecuting the petition.
The county court shall conduct a public hearing regarding the petition. A.C.A. § 14-38-103 (1987). If the county court concludes that the petition should be granted, then the court shall endorse an order authorizing the city or incorporated town to be organized. A.C.A. §14-38-104 (Supp. 1995). However, within one month, any interested person may file a complaint in circuit court seeking an injunction to prevent the incorporation. A.C.A. § 14-38-106 (1987). If the circuit court determines that certain requirements have not been satisfied, then the court shall order that the incorporation be annulled. A.C.A. § 14-38-107
(1987).[2]
I have generally outlined the process provided for in A.C.A. §§14-38-101—114; however, each statute should be read in its entirety for a complete understanding of the process. Further, I suggest that local counsel be consulted regarding the application of these procedures to the particular facts and circumstances of the area to be incorporated.
Question 2 — If the petition method is an acceptable means forincorporation, how must the petitions be drawn?
Please see my response to Question 1.
Question 3 — What are the statutory definitions of the terms "city" and"town"? If there are any differences in these terms under state law,would these differences have an impact on efforts to incorporate a SID asone versus the other?
There are only three classifications of municipal corporations in Arkansas: (1) cities of the first class, (2) cities of the second class, and (3) incorporated towns. A.C.A. § 14-37-102 (1987); see also Op. Att'y Gen. No. 91-152. Each of these terms have distinct, legally significant meanings under Arkansas law. The forms of government available to a municipality, as well as the authority and powers granted to the governing body of the municipality, are determined by the classification of the municipality. See generally Subtitle 3 of Title 14 of the Arkansas Code Annotated. I cannot, in the context of an Attorney General opinion, outline all of the differences between the three classifications of municipal corporations. Any specific questions in this regard should be addressed in the first instance to local counsel.
It should, however, be noted that there are certain differences that must be considered when a group of people in an area attempt to incorporate as "one versus the other." Generally, all municipal corporations having over 2,500 inhabitants shall be deemed cities of the first class. A.C.A. §14-37-103(a)(1) (1987). A municipal corporation having 500 or more inhabitants, but fewer than 2,500 inhabitants, shall be deemed a city of the second class. A.C.A. § 14-37-103(a)(2). All other municipal corporations shall be incorporated towns. A.C.A. § 14-37-103(a)(3). Although A.C.A. § 14-37-103(a) establishes the general rules regarding the classifications of a municipality, there are additional statutes that may effect the classification. For example, any city having a population of 1,500 or more may, by enactment of an ordinance, become a city of the first class. A.C.A. § 14-37-103(b)(2). Similarly, any incorporated town may become a city of the second class by the adoption of an ordinance. A.C.A. § 14-37-112 (1987); A.C.A. § 14-37-103(b)(1). Conversely, any city of the first class that has less than 5,000 inhabitants may choose to be reduced to a city of the second class. A.C.A. § 14-37-114 (Supp. 1995). As can be observed from the foregoing discussion, the municipal classification of a newly incorporated municipality will depend upon both the number of its inhabitants and the subsequent decisions of its governing body.
Question 4 — If a SID is incorporated, will there be any conflict betweenthe powers and duties granted under state law to a SID and those grantedto a city or town?
It must again be noted that the SID itself cannot incorporate as a municipality; only the actual inhabitants of an area may petition to incorporate as a municipality. If there is an existing SID within the boundaries of the newly incorporated municipality, the SID and the municipality would initially be separate and distinct entities.
With regard to potential conflicts, I cannot in the context of an Attorney General opinion undertake a review of all the powers and duties granted to a municipality and a suburban improvement district. See Op. Att'y Gen. No. 91-287. Subtitle 3 of Title 14 of the Arkansas Code Annotated sets forth both general and specific areas of municipal authority, and Article 12 of the Arkansas Constitution sets forth the primary constitutional provisions pertaining to municipal corporations. Chapter 92 of Title 14 of the Arkansas Code Annotated sets forth the general rules regarding suburban improvement districts; A.C.A. §14-92-220 (1987) prescribes the general powers of a district. It is my opinion that local counsel should be consulted regarding the application of the foregoing provisions to the particular facts and circumstances that may be present.
Question 5 — If the SID has developed recreational facilities thatrequire residency as a condition for use of these recreationalfacilities, can the city or town into which the SID is incorporatedreceive state or county funds (state turnback, county sales tax, etc.)and continue to require residency as a condition for use of thesefacilities? May a different fee for use of the recreational facilities becharged to residents versus non-residents?
As discussed in my response to Question 4, the SID and the newly formed municipality would be separate and distinct entities. The newly formed municipality does not simply "become" the owner or operator of the recreational facilities. See Question 6 infra. A suburban improvement district may develop recreational facilities to provide for the recreation and cultural needs of the owners of the lands within thedistrict. A.C.A. § 14-92-219 (1987). The recreational facilities owned by the SID would remain privately owned and controlled by the SID, rather than the municipality, unless the facilities were sold or leased to the newly incorporated municipality. (The SID has the power to sell or lease any improvement owned by it to any adjacent or nearby municipality. A.C.A. § 14-92-220(b) (1987).)
With regard to your specific reference to state turnback funds, I assume that you are principally referring to the distribution of funds to municipalities from the "Municipal Aid Fund" under A.C.A. § 19-5-601
(Supp. 1995). The Revenue Stabilization Law (A.C.A. § 19-5-101 et seq.
(Repl. 1994 and Supp. 1995)) established the Municipal Aid Fund which consists of: (1) general revenues as may be made available by the Revenue Stabilization Law, (2) special revenues derived from highway user imposts as may be made available to the fund by the Highway Revenue Distribution Law, A.C.A. § 27-70-201 et seq., and (3) special revenues as specified in certain sections of the Revenue Classification Law. A.C.A. § 19-5-601(a) (Supp. 1995). The Revenue Stabilization Law mandates the distribution of these revenues to cities and incorporated towns on the basis of population. A.C.A. § 19-5-601(b). It does not appear that a newly incorporated municipality would be prohibited from receiving such funds simply because an SID owned "recreational facilities" within its boundaries.
In Op. Att'y Gen. No. 92-221, a copy of which is enclosed for your review, this office discussed a comparable issue regarding the incorporation of "Cherokee Village." The principal issue addressed in that opinion was whether the City of Cherokee Village would be entitled to state turnback funds if the Cherokee Village Suburban Improvement District was still responsible for the streets. We concluded that the Revenue Stabilization Law mandated the distribution of the special highway revenues on the basis of population and that the fact that SID streets existed within a city did not appear to affect the distribution of the special revenues. Although we opined that the City would be entitled to the turnback funds designated for the City's street fund, we observed that whether the City could spend such funds on suburban improvement district streets posed a separate question that should be referred to counsel. Similarly, it is my opinion that the fact that a SID owns and operates recreational facilities within a municipality would not appear to affect the distribution of funds under the Revenue Stabilization Law; however, the question of whether the municipality could expend such funds on the SID facilities should be addressed to counsel. Section19-5-601(b)(4) provides in part that the general revenues received by the cities and incorporated towns shall be used for general purposes ofmunicipal government.
Question 6 — May a newly formed city or town dissolve a SID locatedwithin its boundaries? If it can, what procedures must be followed? Whatwould the legal consequences of such a dissolution be for the city ortown and the SID?
It is my opinion that a newly formed municipality cannot simply dissolve a SID located within its boundaries. First, A.C.A. § 14-92-237 (1987), entitled "Dissolution of district," discusses only three methods of dissolution; a district can be dissolved in the same manner it was created, by vote of the realty owners at a public hearing, or by vote of the commissioners.[3] Second, the property and facilities are owned by the SID, and Arkansas Constitution Article 2, § 22, provides that "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." Accordingly, it is my opinion that a newly formed municipality cannot simply dissolve a SID located within its boundaries. A municipality, however, could arrange to purchase the property of the SID through either negotiations or eminent domain proceedings depending on the particular circumstances.
Question 7 — What is the term of office for the members of the governingbody of a SID? What is the process for the selection of members of thegoverning body of a SID?
The governing body for a SID is the board of commissioners. Seegenerally A.C.A. §§ 14-92-207 and 210 (1987). The initial commissioners are elected at a public hearing prior to the filing of the petition to form the district. A.C.A. § 14-92-204 (1987). Although there is no specified term of office for a commissioner, the commissioners are subject to recall and in certain instances an existing board can be abolished.See generally A.C.A. § 14-92-202, A.C.A. § 14-92-209, A.C.A. §14-92-240. In Opinion No. 95-348, a copy of which is enclosed for your review, I discussed the relevant statutes regarding the selection and recall of suburban improvement district commissioners.
Question 8 — If a SID is being considered for incorporation, what are therights of the property owners in the SID regarding the proposedincorporation? Does the number of registered voters living in the SIDconsidering incorporation have any impact on the incorporation process?
With regard to the rights of any person living within the boundaries of the area being considered for incorporation, please see my response to Question 1. In response to the second part of your question, it is my opinion that both the number of inhabitants and the number of qualified voters living in the area considering incorporation have an impact on the incorporation process. As previously discussed, the initial classification of a newly incorporated municipality will be based upon the number of its inhabitants. A.C.A. § 14-37-101 et seq. In addition, seventy-five qualified voters residing within the described territory must sign the petition filed in county court. A.C.A. § 14-38-101. Further, if a complaint is filed in circuit court seeking an injunction to prevent the incorporation, the incorporation shall be annulled if a "majority of [the inhabitants] have not signed the original petition."[4] See A.C.A. § 14-38-107; Town of Wrightsville v. Walton,255 Ark. 523, 501 S.W.2d 241 (1973); Response to Question 1.
Question 9 — Are there any differences in the statutory or regulatoryrequirements, federal or state, for installation of a sewer system in aSID versus a city or town?
A comprehensive discussion of the statutory and regulatory requirements regarding the funding and actual installation of a sewer system is beyond the scope of an Attorney General opinion. Subtitle 14 of Title 14 of the Arkansas Code Annotated generally addresses sewer systems. In addition, Subtitle 15 and Subtitle 5 of Title 14 address sewer improvement districts and improvement districts in general. Further, Title 8 of the Arkansas Code Annotated contains the general provisions regarding Environmental Law. Numerous state and federal agencies may be involved in one phase or another of the process, including, but not limited to, the Arkansas Department of Pollution Control and Ecology, the Arkansas Department of Health, the Arkansas Public Service Commission, and the United States Environmental Protection Agency. I suggest that you consult local counsel and contact the appropriate state and federal regulatory agencies.
Question 10 — If a SID considering incorporation into a city or towncontains an airport and adjacent property that was deeded to a nearbyincorporated city or town but has never formally been annexed into thatcity or town, may the SID considering incorporation rescind its previousactions and incorporate the airport and adjacent property into theboundaries of the new city or town being formed by the incorporation ofthe SID? How could this be accomplished? What would be the legalramifications of such an action?
Initially, I am somewhat unclear as to precisely what "previous actions" the SID wishes to rescind. However, I must again emphasize that the SID itself may not incorporate as a municipality. Only the inhabitants of an area may petition to incorporate as a municipality. Consequently, the activities of the SID with regard to property located within its boundaries may not necessarily affect the newly formed municipality or the territory proposed to be embraced in the municipality.
I assume that your question principally concerns the general authority of the inhabitants considering incorporation to include territory owned by a "nearby incorporated city or town" as part of the territory to be embraced in the new municipality. Arkansas Code Annotated §14-38-101(a)(1) provides that the inhabitants of "part of any county not embraced within the limits of any city or incorporated town" may petition to incorporate as a municipality. It is my opinion that this section clearly prohibits any territory "embraced within the limits of any city or incorporated town" from being incorporated as part of another municipality. It is, however, my understanding from your question that the territory owned by the nearby incorporated city or town has never "formally been annexed into that city or town."[5]
As discussed in my response to question one, the incorporation of cities and towns in Arkansas is governed by A.C.A. §§ 14-38-101—114. There is nothing in this subchapter that prohibits the incorporation of territory owned by another municipality, but not within the corporate limits of that municipality. It is, therefore, my opinion that there is no flat prohibition against a municipality incorporating territory owned by another municipality. See Op. Att'y Gen. No. 94-181 (there is no flat prohibition against a city incorporating state lands into its borders). This conclusion, however, does not mandate that the incorporation of such territory will be granted. Id. The county and circuit courts have some discretion in deciding whether the area proposed to be included is proper for incorporation. See A.C.A. § 14-38-104 and § 14-38-107.
Also, in your question you refer to a "nearby incorporated city or town." In accordance, I must note that A.C.A. § 14-38-101(b)(1) provides:
 The [county] court shall not approve the incorporation of any municipality if any portion of the territory proposed to be embraced in the incorporated town shall lie within five (5) miles from the corporate limits of an existing municipal corporation unless the governing body of the municipal corporation has, by written resolution, affirmatively consented to the incorporation.
Local counsel should be contacted regarding the application of the foregoing provisions to the particular facts and circumstances surrounding the incorporation. Finally, because the precise nature of your request is unclear, any further questions should be addressed in the first instance to local counsel.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] It should be noted that the suburban improvement district itself cannot incorporate as a municipality; however, the people that reside within the SID may petition to incorporate the same territory as a municipality. See generally Op. Att'y Gen. No. 92-221.
[2] Section 14-38-107(b) provides that the incorporation shall be annulled if it shall appear to the satisfaction of the court that "the proposed city or incorporated town does not contain the requisite number of inhabitants, that a majority of them have not signed the original petition, or that the limits of the proposed city or incorporated town are unreasonably large or small or are not properly and sufficiently described." See Town of Wrightsville v. Walton, 255 Ark. 523,501 S.W.2d 241 (1973) (if complaint is filed in circuit court, the signatures of a majority of the inhabitants of the town or city must be shown); see also Dunkum v. Moore, 265 Ark. 544,580 S.W.2d 183 (1979) (term inhabitants, as used in this section, means qualified voters residing within the proposed municipality).
[3] In Op. Att'y Gen. No. 93-365, this office opined that there was no general authority for a city to dissolve a sewer improvement district independent of the board of commissioners.
[4] In Dunkum v. Moore, 265 Ark. 544, 580 S.W.2d 183 (1979), the court stated that the term inhabitants, as used in this context, means qualified voters residing within the proposed municipality; the court also used the terms "registered voters" and "qualified voters" interchangeably.
[5] It has been stated that a municipal corporation may purchase real property outside its corporate limits for legitimate municipal purposes.See Op. Att'y Gen. No. 90-024. This conclusion is also supported by A.C.A. § 14-52-104 (1987) which provides that municipal police officers shall have the same police powers on municipally owned property located outside the corporate limits of the municipality that they exercise within the corporate limits of the municipality.