The Honorable John E. Brown State Senator 17900 Ridgeway Drive Siloam Springs, Arkansas 72761-8866
Dear Senator Brown:
This is in response to your request for an opinion on ten questions concerning the incorporation of Bella Vista Village. It is my understanding that Bella Vista Village is operated by a Property Owners Association (POA). It is also my understanding that the community is considering incorporating as a city of the first class to be called Bella Vista.
As a general matter, I must state that the questions you have posed are more in the nature of a request for legal advice than a request for an official opinion. I am statutorily prohibited from the private practice of law, and thus cannot provide the detailed legal advice for which private counsel should be employed before initiating the incorporation process. I will, however, provide you with some general state law that may be implicated by your questions.
For purposes of clarity, some of your questions have been restated in part, and the ordering of your questions has been modified.
Question 1 — Does either the County Judge or Quorum Court have anydiscretion in taking action concerning the petition for incorporation?
In my opinion, the county court has some discretion regarding the petition for incorporation.[1] See A.C.A. § 14-38-104 (Supp. 1995) and Op. Att'y Gen. 94-181. The incorporation of cities and towns in Arkansas is governed by A.C.A. §§ 14-38-101 et seq. (1987 Supp. 1995). See Op. Att'y Gen. Nos. 96-385 (copy enclosed); White v. Lorings, 274 Ark. 272,623 S.W.2d 837 (1981). If the inhabitants of the area desiring to be organized into a city apply by petition to the county court, then the county court must conduct a public hearing regarding the petition. A.C.A. §§ 14-38-101 and 14-38-103. At the hearing, the county court may, in its discretion, permit the agent named in the original petition to amend or change it. A.C.A. § 14-38-103. Further, after hearing the petition, the county court must be satisfied that at least seventy-five qualified voters reside within the limits described by the petition, that the petition has been signed by them, that the limits of the area to be incorporated have been accurately described, that an accurate map or plat thereof has been made and filed, and that the name proposed for the city is proper and sufficient to distinguish it from others. A.C.A. §14-38-104. Finally, it must be "deemed right and proper, in the judgment and discretion of the court," that the petition should be granted. Id.
Question 2 — The new city of Bella Vista will eventually be eligible forturnback funds from the State and the County. It is estimated this willtake a year or more after the County deems Bella Vista a city. If thecity does not plan to levy taxes or issue bonds but operate only onturnback monies, may the new city issue warrants or borrow money inanticipation of these State or County turnback receipts or must it waituntil the actual funds are received?
The answer to this question will depend upon the particular facts. Article 16, § 1, of the Arkansas Constitution prohibits "any county, city or town or municipality [from] ever issu[ing] any interest bearing evidence of indebtedness." This provision has been interpreted to mean that a municipal corporation cannot make a legal and binding contract by which it agrees to pay interest on its indebtedness. See Op. Att'y Gen.88-360. Further, article 12, § 4, of the Arkansas Constitution generally prohibits cities from incurring indebtedness in excess of revenues for the fiscal year in which the contract was made. See Op. Att'y Gen. 94-082. This provision provides in part:
 The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, . . . nor shall any city council, board of alderman, board of public affairs, or commissioners of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrants, scrip, or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town sign or issue scrip, warrant or other certificate of indebtedness [in] excess of the revenue from all sources for the current fiscal year.
Finally, cities of the first class are statutorily authorized to borrow a limited amount of money only under certain circumstances. See A.C.A. §14-58-101 et seq. (1987). Section 14-58-101(a) provides that "cities of the first class may borrow money for the ordinary operating expenses of the city after January 1 of each year in anticipation of the property tax collections collectible in that year." The city may issue noninterest-bearing evidences of indebtedness for money borrowed pursuant to section 14-58-101(a). A.C.A. § 14-58-401(c).
Question 3 — The POA also works with the County Sheriff who providescommissioned deputies and automobiles to work out of a "station" in theVillage. The POA provides the station and the financial support to thepolice operation. Could the POA continue to fund the "Bella Vista Divisionof the County Sheriff's Office" until the funding would become availablefrom the city?
A conclusive response to your question would require a complete review of the particular facts and circumstances. Generally, the sheriff owes a law enforcement duty to all of the people of the county, see Op. Att'y Gen.95-038, and the county judge may accept, in behalf of the county, funds from private sources, A.C.A. § 14-14-1102 (1987). If, however, your question refers to deputies actually employed by the POA, then it is my opinion that the answer to this question is most likely "no." Arkansas Code Annotated § 14-15-503(b) provides that deputy sheriffs are authorized to make arrests for misdemeanor offenses and felony offenses and exercise all other powers as deputy sheriffs while in the course of their employment for planned community property owners' associations. In Opinion No. 95-238 (copy enclosed), I opined that the "City of Fairfield Bay" in all likelihood no longer qualified as a "planned community property owners' association" as contemplated in § 14-15-503 because it was incorporated as a city. Similarly, it appears that if the city of "Bella Vista" is incorporated, then in all likelihood the definition of "planned community property owners' association" would no longer be satisfied. Thus, the deputies employed by the POA would no longer be employed by a "planned community property owners' association" for purposes of section 14-15-503(b).
Question 4 — The POA presently provides two 24-hour per day equipped andoperating fire stations. They are financed with assessment dollars fromeach of the 38,000 lots. Could the new city meet the fire department"obligation" imposed by A.C.A. § 14-53-101 by contracting with the POA,or by providing grants to the POA for fire protection services, or mustit own and operate a fire department outright?
In my opinion, the city is not required to "own and operate a fire department outright." Arkansas Code Annotated § 14-53-101(a) (1987) provides that the "city council shall establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration." It thus appears that the citymust establish a "fire department," but in my opinion the city may contract for the provision of fire protection services and equipment. Cities have the authority to contract for municipal purposes, including the provision of services, as long as the contract is supported by adequate consideration. See A.C.A. § 14-54-101; Op. Att'y Gen. Nos.93-374 and 91-358 (city of the first class authorized to contract for the operation of a recreational program). A grant or donation of city funds to a private entity is, however, prohibited by Ark. Const. art. 12, § 5, which provides in part that no city shall "obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual." See generally Op. Att'y Gen. 96-287.
Question 5 — Does Arkansas law allow a "private" corporation like the POAto provide or partially subsidize municipal functions which serve theproperty owners and which would also serve the city residents? Can the POAcontinue to provide the services of road repairs, police and fireprotection within the city limits of the newly organized city of BellaVista?
Initially, it must be noted that a private corporation may donate funds to a city. It is, however, my opinion that once the funds are donated, the funds are city funds. See Op. Att'y Gen. 92-250. In addition, as stated in my response to question four, cities have the authority to contract for municipal purposes, including the provision of services, as long as the contract is supported by adequate consideration.[2]
Question 6 — If the answer to question 5 is yes, would it be appropriatefor the city to take notice of the POA operation or funding of municipalservices and adopt a contract or a "memorandum of understanding andcooperation" between the city and the POA?
The proper method for contracting with a private entity would presumably be by use of written contract drafted by the counsel for the city and the private entity involved. A conclusive determination would, however, require review of the specific proposals. I suggest that the city consult its local counsel in this regard.
Question 7 — Road turnback funds from the State and County must be usedfor roads. Since the POA has a public works department, which includesequipment and personnel, and presently maintains the roads of Bella VistaVillage, could the new city of Bella Vista disburse its dedicated roadfunds to the POA for road purposes through a contractual agreement?
With regard to your reference to road turnback funds, I assume that you are referring to the distribution of funds to municipalities from the "Municipal Aid Fund" under A.C.A. § 19-5-601 (Supp. 1995). The Revenue Stabilization Law, A.C.A. § 19-5-101 et seq. (Repl. 1994 and Supp. 1995), established the Municipal Aid Fund which, in part, consists of special revenues derived from highway user imposts as may be made available to the fund by the Highway Revenue Distribution Law, A.C.A. §27-70-201 et seq. See A.C.A. § 19-5-601(a). The statute further provides that special revenues derived from highway revenues shall be used as provided by the Highway Revenue Distribution Law. In turn, the Highway Revenue Distribution Law provides that the Municipal Aid Fund revenues shall be paid to the city treasurer "for credit to the street fund, there to be used for the maintenance, construction, and reconstruction of streets which are not continuations of state highways." A.C.A. §27-70-207(b)(1).
As a general matter, it is my opinion that a city could use such funds to contract with a private entity for the purpose of "maintenance, construction, and reconstruction of streets which are not continuations of state highways." I must, however, note that I have opined that A.C.A. § 27-70-207(b)(1) implies that such funds shall be used on municipal streets. See Op. Att'y Gen. 92-221 (copy enclosed). It is unclear from your letter whether the POA plans to dedicate the streets in question to the city.
Question 8 — What municipal services, if any, is the city by law requiredto perform?
Question 9 — If the new city decided against providing certain municipalservices, could the city or its officials be liable for malfeasance ormisfeasance?
Question 10 — Have any Arkansas cases been decided against publicofficials or cities because the cities did not provide municipal serviceswhich were expected but not promised?
Question 11 — Is it possible for the new city to assume municipalfunctions only when it is financially able to do so?
Again these questions are more in the nature of a request for legal advice than a request for an official opinion. I am statutorily prohibited from the private practice of law, and thus suggest that the city consult its local counsel in this regard.
Nevertheless, it is generally held that "the exercise of the powers of [a] municipality with respect to the making of public improvements, the establishment of public utilities, and the furnishing of public services, rests in the discretion of the governing municipal authorities." 56 Am Jur 2d, Municipal Corporations § 560 (1971). The duty, however, to undertake and maintain improvements of a public or governmental nature may be imposed by the legislature. Id. For example, as discussed in my response to question four, it appears that the city must establish a fire department. A.C.A. § 14-53-101(a). The city must also cause the public highways, bridges, streets, alleys, public squares, and commons within the city to be kept open and in repair, and free from nuisance. A.C.A. § 14-301-101. In addition, all municipalities shall provide a solid waste management system which will adequately provide for the collection and disposal of all solid wastes generated or existing within the incorporated limits of the municipality. A.C.A. §8-6-211 (Supp. 1995). On the other hand, I have opined that there is no general requirement that a city have a police department. See Op. Att'y Gen. 94-358.[3]
Subtitle 3 of Title 14 of the Arkansas Code Annotated sets forth both general and specific areas of municipal authority, and Article 12 of the Arkansas Constitution sets forth the primary constitutional provisions pertaining to municipal corporations. Local counsel should be consulted regarding the application of the foregoing provisions to the particular facts and circumstances that may be involved in the incorporation of the city of Bella Vista.
Finally, a municipality, when acting in its governmental capacity, is generally not liable for the nonfeasance of its officers and agents.[4]See Little Rock v. Holland, 184 Ark. 381, 42 S.W.2d 383 (1931). As to municipal officials, if the mayor, a member of the city council, or any other elective officer of a city of the first class "shall willfully and knowingly fail, refuse, or neglect to execute, or cause to be executed, any of the laws or ordinances within their jurisdiction, they shall be deemed guilty of nonfeasance in office." A.C.A. § 14-42-109 (1987). Thus, city officials could be subjected to claims of nonfeasance for failure to execute laws of the state or city ordinances, including those regarding the provision of municipal services. I am, however, unaware of any reported decisions of the Arkansas Supreme Court or the Arkansas Court of Appeals concerning the failure to provide "expected" municipal services.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] The county judge presides over the county court. A.C.A. §14-14-1105 (Supp. 1995).
[2] It should be noted that a POA does not have the authority to create a "police" department; therefore, as a practical matter, it could not provide "police" services to the city. Nevertheless, the fact that a policemen is employed and paid by a private agency other than the public agency having direct responsibility for law enforcement at the time an offense is being committed, or is about to be committed, does not impair his right to make an arrest or take appropriate action. See Meyers v.State, 253 Ark. 38, 484 S.W.2d 334 (1972).
[3] In Opinion 94-358, I noted that the duty imposed under A.C.A. §14-55-103 (1987) must also be considered. Section 14-55-103 provides that it is the duty of municipal corporations to publish such bylaws and ordinances as shall be necessary to secure such corporation and its inhabitants against injuries by fire, thieves, robbers, burglars, and other persons violating the public peace.
[4] Nonfeasance means the omission of an act which a person ought to do, misfeasance is the improper doing of an act which a person might lawfully do, and malfeasance is the doing of an act which a person ought not to do at all. Black's Law Dictionary 902 (5th ed. 1979).