The Honorable Kevin D. Goss State Representative 26 Union Street Wilson, Arkansas 72395
Dear Representative Goss:
I am writing in response to your request for an opinion on "a possible violation of election law" in light of "the closing of the county clerk's office/courthouse during the early voting period that begins on May 8th at the Osceola Courthouse (Mississippi County) on Friday May 12th and Saturday May 13th." You indicate in your request, and through information contained in a newspaper article you have enclosed with your request, that the Mississippi County Election Commission has voted to move the early voting location from the county clerk's office for these two days to a yet-to-be announced alternate location in order to accommodate the holding of an annual music festival near the courthouse. I assume from the information provided that the county clerk's office is in the courthouse. Apparently, logistical problems have arisen in trying to accommodate early voting in the area of festival, during which the "square around the courthouse is blocked to prevent people from entering . . . without buying a ticket." See Christie Benham, "Early voting in Osceola moved," Blytheville Courier News, March 29, 2006, page 1. Apparently, "[a]nother concern is that politicians cannot campaign within a 100 feet of a polling site and politicians are often at the Osceola Music Fest passing and materials and meeting voters." Id.[1] After discussing these and other concerns, the Election Commission apparently voted to move early voting to an alternate location for the two days of the festival.
Although you have posed no discrete question upon which you seek my opinion, you indicate your concern that this action of the Election Commissioners may present a "violation of election law." I assume, therefore, that your question is whether the above facts contravene any applicable election laws.
RESPONSE
To the extent you allege a possible violation of election laws, I must note initially that the State Board of Election Commissioners, and not this office, has been given the power to "[i]nvestigate alleged violations, render findings, and impose disciplinary action . . . for violations of election and voter registration laws. . . ." A.C.A. § 7-4-101 (Supp. 2005). Seealso, A.C.A. § 7-4-118 (Supp. 2005). I am thus not empowered to determine, as a factual matter, whether any violation of an election law has occurred. I can, however, in response to your request, render my advisory opinion as to the proper interpretation of the most applicable statute in this regard. Any determination as to whether an election law violation has occurred, however, must be left to the jurisdiction of the State Board of Election Commissioners. That being said, in my opinion, the applicable law, A.C.A. § 7-5-418 (Supp. 2005) does not clearly prohibit the conduct you describe.[2]
The most relevant statute is A.C.A. § 7-5-418 (Supp. 2005), which provides in relevant part as follows:
 (a)(1)(A) Except as provided in subdivision (a)(1)(B) of this section, early voting shall be available to any qualified elector who applies to the county clerk's designated early voting location, beginning fifteen (15) days before a preferential primary or general election between the hours of 8:00 a.m. and 6:00 p.m. Monday through Friday and 10:00 a.m. and 4:00 p.m. Saturday and ending at 5:00 p.m. on the Monday before the election.
 (B) Early voting shall not be available on state holidays.
 * * * (b)(1)(A) The county board of election commissioners may decide to hold early voting at additional polling sites outside the offices of the county clerk and to include the additional voting locations for a maximum of fifteen (15) days on any of the days and times provided for in subsection (a) of this section, if it so chooses.
 (B) The county board shall determine by unanimous vote the location of additional polling sites for early voting.
 (C) The county clerk shall publish the location of additional early voting polling sites in a newspaper of general circulation at least five (5) days before early voting begins.
 * * * (3)(A) The county board shall notify the county clerk of its decision to hold early voting at additional polling sites outside the office of the county clerk within ten (10) days of the decision.
 (B)(i) If the county board decides to hold early voting at additional polling sites outside the office of the county clerk, the county clerk may choose not to hold early voting within the office of the county clerk. The county clerk shall notify the county board within ten (10) days of the receipt of notice from the county board regarding early voting at additional polling sites.
 (ii) If the county clerk decides not to hold early voting within the office of the county clerk as provided in subdivision (b)(3)(B)(i) of this section, early voting shall be held at one (1) or more conveniently located polling sites on the days and times provided in subsection (a) of this section.
 * * * (e) The county clerk or county board shall furnish voting locations that adequately allow the early voter to personally and secretly execute his or her ballot.
 * * * (h) Except as provided in this section, early voting shall be conducted in the same manner as voting on election day. Conduct that is prohibited or restricted on election day shall be subject to the same prohibitions and restrictions on the days on which early voting is conducted.
(Emphasis added).
Obviously, under subsection (b)(1)(A) above, the Mississippi County Election Commission has authority to authorize additional polling locations "outside the offices of the county clerk" and to include the additional voting locations for a maximum of fifteen (15) days on "any of the days and times provided for insubsection (a). . . ." (Emphasis added). This subsection, in my opinion, gives the county election commission the authority to add additional polling sites for only a portion of the fifteen-day period. See, e.g., Brown v. Rushing, 70 Ark. 111,66 S.W. 442 (1902) ("`any' does not mean `every,' but one indifferently"). In the event the county board prescribes additional polling sites, subsection (b)(3)(B)(i) authorizes the county clerk to "choose not to hold early voting within the office of the county clerk." If the clerk exercises this option, "early voting shall be held at one (1) or more conveniently located polling sites on the days and times provided in subsection (a) of this section." A.C.A. § 7-5-418 (b)(3)(B)(ii). These latter subsections do not as nearly contemplate thetemporary maintenance of additional polling sites, or thetemporary suspension of early voting at the clerk's office. That is, subsections (b)(3)(B) (i) and (ii) do not appear to contemplate additional polling sites or the inaccessibility of early voting at the clerk's office for only a portion of the fifteen-day early voting period, as does subsection (b)(1)(A).
Some disconnect between the internal subsections of this statute may exist because the statute is comprised of a number of different legislative acts passed in different sessions of the General Assembly. See Acts 1995, No. 686; 1995, No. 948; 1997, No. 967; 1997, No. 1092; 2003, No. 269; 2005, No. 655; 2005, No. 880; and 2005, No. 1690. Subsection (b)(1)(A), authorizing the county board to provide additional polling sites "on any of thedays and times provided for in subsection (a)," (emphasis added), was adopted by virtue of Act 269 of 2003. Subsection (b)(3)(B)(i), which authorizes the county clerk to "choose not to hold early voting within the office of the county clerk," pre-existed the adoption of that language. It was adopted by virtue of Act 967 of 1997, and at the time of its adoption, only applied to counties with a population over 150,000. That limitation has since been repealed. See Act 269 of 2003. Subsection (b)(3)(B)(ii), requiring the holding of early voting at one or more "conveniently located polling sites on the days and times provided in subsection (a)" ("[i]f the county clerk decides not to hold early voting within the office of the county clerk as provided in subdivision (b)(3)(B)(i)," was added only recently, by virtue of Act 655 of 2005.
Because established rules of statutory construction dictate that seemingly contradictory provisions be reconciled to the extent practicable, to make them consistent, harmonious and sensible, the provisions set out above must be harmonized, if possible. See Ragland v. Allen Transformer Co., 293 Ark. 601,740 S.W.2d 133 (1987); and Gilbert v. Gilbert Timber Co.,19 Ark. App. 93, 717 S.W.2d 220 (1986). The Arkansas Supreme Court has held that where two statutes or parts of statutes seem to conflict, they should be interpreted, if possible, so that the provisions of the two can be harmonized and so that both can be upheld and given effect. See, e.g., Minnesota Min. Mfg. v.Baker, 337 Ark. 94, 989 S.W.2d 151 (1999); Central SouthernCompanies, Inc. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999);Thomas v. Cornell, 316 Ark. 366, 872 S.W.2d 370 (1994). In my opinion all the various subsections of A.C.A. § 7-5-418 must now be read together to produce a harmonious whole.
Under subsection (b)(1)(A), the county board of election commissioners clearly has the authority to authorize additional polling sites for only a portion of the early voting period. The language of subsections (b)(3)(B)(i) and (ii), regarding the decision of the county clerk to forgo holding early voting at the county clerk's office in such event, must, in my opinion, be read in light of the board's authority in this regard. Under the provisions of the statute, the county clerk's decision to forgo early voting in the clerk's office is prompted by, and a corollary to, the decision of the county board. In my opinion, therefore, the county clerk is similarly authorized to decline to hold early voting at the clerk's office during the partial period when the additional polling sites will be operating, in order to mirror the exercise of the county board's authority in this regard. This construction of the statutory subsections creates harmony within the statute and gives effect to each provision.
In my opinion, therefore, the proposed action of the Mississippi County Election Commission does not clearly contravene A.C.A. § 7-5-418.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: ECW/cyh
[1] See A.C.A. § 7-1-103(9)(A) (Supp. 2005) (regarding the one-hundred foot limitation).
[2] You have also mentioned "HAVA" the federal "Help America Vote Act" in your request. See Public Law 107-252 (107th
Congress) (2002), codified at 42 U.S.C. §§ 15301 to -155545. Because this is a federal, rather than a state law, however, I am not possessed of any particular expertise in its construction. In accordance with § 402 of the federal law, the State Board of Election Commissioners is authorized to "[f]ormulate, adopt, and promulgate all necessary rules and regulations to establish uniform and nondiscriminatory administrative complaint procedures consistent with the requirements of Title IV of the federal Help America Vote Act." A.C.A. § 7-4-101(f)(8)(A) (Supp. 2005). Any complaint regarding compliance with "HAVA" should thus be forwarded to the State Board of Election Commissioners.